[Civ. No. 20136.   Second Dist., Div. One.   June 22, 1954.]

MARIA FRANCISCA BUCK, Appellant, v. ALBERT LEE
BUCK, Respondent.

A. Albert Spar for Appellant.

Samuel Maidman for Respondent.

WHITE, P. J.—This is an appeal by plaintiff from an order denying the motion to vacate her default and to set aside the ensuing decree of annulment.

The parties intermarried on July 31, 1952, and less than two months thereafter, on September 16, defendant husband herein filed an action for annulment on the ground that at all times after the marriage ceremony plaintiff herein refused to consummate said marriage or to live and cohabit with defendant as husband and wife.   A reconciliation was

effected about October 1, 1952, and the parties again lived together for about 10 days when another separation occurred continuing until November 20, 1952, when they again reconciled and lived together until about January 5, 1953. Whether any subsequent reconciliation occurred is not revealed by the record, but it is conceded that the above action was dismissed by the defendant herein who filed the same.

On February 20, 1953, plaintiff in the instant proceeding filed an action for separate maintenance on the ground of extreme cruelty, alleging that the date of separation was January 5, 1953. On September 6 of the same year a child was born to plaintiff.

Defendant filed an answer to the last-mentioned complaint and also a cross-complaint for annulment on the ground of fraud, or in the alternative, a divorce on the ground of extreme cruelty.

Thereafter, on March 25, 1953, plaintiff and defendant, through their respective counsel, entered into a stipulation, as follows: ". . . that the complaint in the within action may be deemed to be withdrawn and that the cross-complaint on file herein may be heard as a default."

Pursuant to the foregoing stipulation, the cause was set for hearing and on April 20, 1953, on the testimony of cross-complainant (defendant husband), a judgment of annulment was rendered. Thereafter, plaintiff discharged her attorneys and procured other counsel. On July 10, 1953, through her present counsel, plaintiff filed her motion to vacate the decree of annulment. After a hearing had upon affidavits and counteraffidavits, the motion was denied. From the order denying her said motion plaintiff prosecutes this appeal.

The only ground urged as a reason for reversal of the order in question is that the court abused its discretion in refusing to set aside the default decree of annulment.

### PLAINTIFF'S SUPPORTING AFFIDAVIT

In support of the motion, plaintiff presented her own affidavit in which she avers that she and her husband lived together as husband and wife from September 26, 1952, until January 5, 1953, "during all of which time the parties cohabited and affiant became pregnant. That on January 2, 1953 she conferred with her husband's attorney and was advised that there could be no annulment of affiant's marriage if she was with child." That on January 9, 1953, at the request of her husband, she consulted a physician to

ascertain if she was pregnant and that said physician advised plaintiff and her husband that she was pregnant. That from February to April, 1953 she and her husband often cohabited and had sexual relations. That following the filing of her complaint for separate maintenance on February 20, 1953, defendant husband filed his cross-complaint for annulment on the grounds of fraud in that affiant secretly intended not to consummate said marriage or cohabit with her husband at the time of said marriage and married him for the sole purpose of becoming a permanent resident of the United States. That actually, said allegations were false, affiant and her husband having consummated the marriage and cohabited as hereinabove set forth. That ''On or about March 7th or 8th, 1953, affiant and husband again agreed to reconcile and further agreed to cause all litigations pending between them to be dismissed; that in furtherance thereof affiant instructed her counsel Anthony Newman to dismiss her complaint; that in furtherance thereof husband's complaint of September 16, 1952, was dismissed on March 13th, 1953; that in further- ance thereof husband and affiant again reconciled and had sexual relations on March 9th, 1953, at the San Marino Street residence, and thereafter had such relations a number of times, including on March 29th, 1953.'' After averring that defendant husband failed to have his cross-complaint for annulment dismissed and entered her default thereto, plain- tiff avers that, ''On March 30, 1953, affiant's attorney . . . without the knowledge of affiant, entered into a stipulation that the cross-complaint could be heard as a default; that if affiant had known or understood that a default against her would have been taken she would not have permitted her counsel to dismiss her complaint, nor permitted him to stipu- late that the cross-complaint could be heard as a default, since affiant has at all times mentioned herein had a good and meri- torious cause of action for separate maintenance or divorce against husband for his extreme cruelty as hereinbefore alleged, and a good and meritorious defense to husband's cross-complaint; that further, since affiant was at this time, the month of March, 1953, pregnant and bearing the child of her husband she would have refused under any circumstances to deprive the child of the parties, while unborn, of its rights, and condemn it to the stigma of bastard; and that affiant at all times believed husband would dismiss his part of this action as he had agreed and promised to do.''

It is then averred that plaintiff first learned of the decree annuling her marriage when defendant husband visited her at Tiajuana, Mexico, on April 25, 1953, and after spending the night together and having sexual intercourse, her husband, on the following morning informed her of the annulment decree. That at said time, ''The conduct of husband placed affiant in such a condition of confusion, hysteria, emotional upheaval, and fear of deportation that affiant has been unable to secure counsel and advice until this time.'' Plaintiff then avers that she first entered the United States from Argentina in December, 1951, that she is a native of Argentina, that she ''was completely ignorant of any of the procedural and substantive laws of California; that affiant at all times mentioned herein did not speak or understand the English language; that affiant at all times mentioned herein did not have education or training sufficient to enable her to comprehend that a decree of annulment could be entered against her; and that affiant understood that if she stopped her part of the lawsuit the entire lawsuit would also stop.''

### DEFENDANT'S COUNTERAFFIDAVIT

After setting forth the filing of his original annulment action on September 16, 1952, and the successive separations and reconciliations of the parties, defendant avers ''That during all of said time and from the beginning of the marriage of the parties, plaintiff on many occasions told your affiant that the only reason she married him was to preserve her status in the United States as a desirable alien and to have affiant assist her in furnishing transportation and support for a minor child of plaintiff's then and now residing in Argentina.''

Referring to plaintiff wife's averments of reconciliation between them defendant husband avers that he refused such offers. He further stated, that ''on a number of occasions plaintiff stated to your affiant that she was well aware of the nature of the annulment action filed by your affiant on or about March 5, 1953, and on several occasions plaintiff told your affiant she was returning to Argentina to rejoin her family.''

With reference to the occasion when plaintiff claims she first learned of the decree of annulment defendant avers that following the entry of such decree, ''he visited plaintiff on or about April 25, 1953, for the purpose of informing her that the annulment had been granted; that when he so in-

formed plaintiff, she implored him to remain with her that night as a parting remembrance of their relation; that plaintiff stated to your affiant at said time that she was satisfied any further reconciliation would be impossible and she would return to her home in Argentina; that affiant acceded to plaintiff's entreaties and spent the night with her at the Mission Santa Isobel Hotel in Ensenada, Mexico.

"That at said time plaintiff was not confused, hysterical or emotionally upset, but had completely resigned herself to the fact that she would return to her home in Argentina, or possibly to Peru; that affiant stated to plaintiff his desire to part from her as a friend, and in the event she needed any financial assistance upon the birth of a child, he would be helpful to the extent his finances would permit."

Defendant's attorney in his affidavit admits that plaintiff herein visited him in his office about January 2, 1953, but that he advised her he was representing her husband and that she should seek independent legal counsel; that at no time did he state to defendant, "that there could be no annulment of her marriage if she was with child." Defendant's attorney then avers that subsequently he had conversations with plaintiff's attorney who advised him that plaintiff "had approved a request for entry of dismissal of her complaint, and that he had filed the same." That subsequently thereto, the formal stipulation above set forth was prepared, signed and filed.

We are not unmindful of the doctrine that the granting of relief under section 473 of the Code of Civil Procedure is primarily committed to the discretion of the trial court, but such decision must be founded upon a sound discretion, predicated upon a fair consideration of the evidence in its entirety and the reasonable and logical inferences to be drawn therefrom. And, in all cases, it must be founded upon the principles of justice and fair dealing.

As was said in *Elms* v. *Elms,* 72 Cal.App.2d 508, 519 [164 P.2d 936] : "It is not a mental discretion but an impartial discretion guided by fixed legal principles 'to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice.' (*Brill* v. *Fox,* 211 Cal. 739, 743 [297 P. 25] ; *Bailey* v. *Taaffe,* 29 Cal. 422, 424.) The burden of proving excusable neglect is upon the defendant who must establish his thesis by a preponderance of the evidence. (*Bruskey* v. *Bruskey,* 4 Cal.App.2d 472, 479 [41 P.2d 203].) If from a scrutiny

of all of the evidence in a proceeding under section 473 to vacate a judgment of annulment it is clear that the court abused its discretion in holding that there was excusable neglect on the part of the defendant, the order must be reversed. (*Essig* v. *Seaman,* 89 Cal.App. 295 [264 P. 552].)''

This is an annulment proceeding and the principles which are applicable when a motion is made under section 473 of the Code of Civil Procedure to set aside a default judgment severing the marital status are concisely stated in *Garcia* v. *Garcia,* 105 Cal.App.2d 289, 290 [233 P.2d 23], as follows: '' 'As said in *Rehfuss* v. *Rehfuss,* 169 Cal. 86, 92 [145 P. 1020]: ''The rules of practice applicable to divorce actions differ in many respects from those which govern other actions. In an action for divorce, upon very slight showing the court will set aside a default, if application for relief be made in due time . . . The law is at all times very solicitous to preserve the integrity of the marriage relation. That relation is the basis of the family, the foundation of society . . . An action for divorce concerns not only the parties immediately interested, but also the state . . . It is the duty of the court, representing the state, in accordance with the letter and policy of the law, to guard strictly against fraud, collusion, or imposition when the husband or wife seeks to dissolve the bonds that bind them together.'' In *Hambrick* v. *Hambrick,* 77 Cal.App.2d 372, 377 [175 P.2d 269], the court said: ''As has been said repeatedly: '. . . An appellate court, owing to the remedial character of the statute and the policy of applying it liberally to permit an opportunity to present a substantial defense, listens more readily to an appeal from an order denying relief than to one granting relief . . .' (14 Cal.Jur. 1076; see, also, *Waybright* v. *Anderson,* 200 Cal. 374, 377 [253 P. 148], *supra,* and cases cited; *Brill* v. *Fox,* 211 Cal. 739, 743-744 [297 P. 25]). Even in a case where the showing under section 473 is not strong, or where there is any doubt as to the setting aside of a default, such doubt should be resolved in favor of the application (14 Cal.Jur. p. 1076).'' ' (See also *McBlain* v. *McBlain,* 77 Cal. 507, 509 [20 P. 61]; *Wadsworth* v. *Wadsworth,* 81 Cal. 182, 183 [22 P. 648, 15 Am.St.Rep. 38]; *Landon* v. *Landon,* 74 Cal. App.2d 954, 958 [169 P.2d 980].)'' (See also *Gregory* v. *Gregory,* 92 Cal.App.2d 343, 345 [206 P.2d 1122].)

It has been held that a default judgment by which a marriage is dissolved, property rights lost, character assailed and children of tender years taken from a parent, is a harsh judg-

ment and should, upon proper application, be vacated. That failure to do so constitutes an abuse of discretion (*Mulkey* v. *Mulkey,* 100 Cal. 91 [34 P. 621]; *Rehfuss* v. *Rehfuss, supra,* pp. 89, 90, 91; *Landon* v. *Landon,* 74 Cal.App.2d 954, 958 [169 P.2d 980]). ██ If, under the circumstances just alluded to, the judgment is a harsh one, surely a judgment which, as in the instant case, affects for all practical purposes the legitimacy of a child, must be characterized as harsh, and brings the present action within the sound public policy which favors the determination of actions on their merits.

It is true, as respondent urges, that section 84 of the Civil Code legitimatizes children conceived or born before the judgment but in the instant case the judgment of annulment makes no mention of the child here in question, and so far as the record before us discloses, defendant father, upon information and belief, denies paternity of the child. We also search the annulment decree in vain for any support provision or order of custody as provided for in section 84 of the Civil Code.

It is true, as stated by respondent, that there was a stipulation for the entry of plaintiff's default and that defendant's cross-complaint might be heard as a default matter, but when consideration is given to the circumstances and plight of plaintiff, there is much to be said in favor of her contention that it was her understanding and belief that at the time of the last reconciliation of the parties, it was agreed that all actions between them were to be dismissed.

We are persuaded that under the circumstances surrounding this case any doubt as to whether the judgment of annulment should be set aside should be resolved in favor of the applicant for remedial relief. Having in mind the foregoing legal principles and the circumstances presented by the record herein, we are impressed that it was an abuse of discretion to deny the relief sought by plaintiff.

The order appealed from is reversed and the cause remanded with directions to the court below to vacate and set aside the judgment and to allow plaintiff to file an answer to defendant's cross-complaint, if she be so advised, within a reasonable time.

Doran, J., and Drapeau, J., concurred.