[Civ. No. 7007.   Fourth Dist.   Jan. 18, 1963.]

THOMAS L. STOUT et al., Plaintiffs and Appellants, v. PERCY BAKKER et al., Defendants and Respondents.

*Assigned by Chairman of Judicial Council.

James L. King and Clyde Thomas for Plaintiffs and Appellants.

Lewis & Cowett and William O. Lewis for Defendants and Respondents.

GRIFFIN, P. J.—Plaintiffs-appellants, husband and wife, first filed this action in Los Angeles County on July 29, 1960, alleging a claimed cause of action against defendants T. A. Glenn, Glenn Construction, Inc., Don Oakes, Don Oakes Lumber Company, a bank, and several John Does. They were served with process. On a motion for change of venue by them, the action was transferred to San Bernardino County on February 6, 1961. An amended complaint was there filed on April 19, 1961, naming additional defendants, the employees of defendant Oakes, including defendants and respondents Percy Bakker and Major D. Fronaberger, who were apparently sued in the original complaint as Does One and Two.

An alias summons was issued in San Bernardino County on April 19, 1961, and the original complaint was served on these two defendants, with the Los Angeles caption, on April 28, 1961, in San Bernardino County where they resided. The complaint alleged that plaintiffs were purchasing a home; that defendants T. A. Glenn and Don Oakes and their employees broke into the house while plaintiffs were out of town, took possession and kept the house and all plaintiffs' clothing, personal effects, furniture and machines and tools used in their sign-painting business, all pursuant to a conspiracy.

Defendants' answer denied generally these allegations and alleged that any entry made by them was done under color of right due to default in plaintiffs' contract of sale payments. After Bakker and Fronaberger were served with summons and complaint, each of them talked with defendant Oakes, their employer, who had already appeared by answer in the action, and Oakes told them that he would have his attorney, William O. Lewis, take care of the matter for them.

On May 22, 1961, a request by plaintiffs for default of these two respondents was filed and default was entered, and on August 9, 1961, default judgment was entered in the sum of $15,723 against each respondent.

On the motion to set aside the default and default judgment, affidavits were used in support of the motions. Fronaberger stated therein that, after being served and reading the summons and complaint, he realized that the case was one wherein his friend and codefendant Don Oakes was accused of entering the premises of the plaintiffs and removing furniture and other property; that, having been present when some of the acts complained of occurred, he immediately called his codefendant Don Oakes and advised him that he had been served with summons and complaint and asked Oakes what he should do about it; that in reply to this inquiry Oakes stated to him over the telephone that:

"My lawyer knows all about it— Just wait until you hear from him or me. All will be taken care of";

that two or three days after the service of summons and complaint, Oakes came into his (Fronaberger's) meat market and he showed Oakes the copy of the summons and complaint which had been served on him; that Oakes stated, "My lawyer will take care of everything" and told him not to worry about it, that "it's all taken care of"; that two or three times in the 10 days following service of the summons and complaint, he saw Oakes and asked him personally if he had taken care of the papers and filed an appearance for him, and that on each occasion Oakes replied substantially to the effect that he had not heard from his attorney, but that "everything would be taken care of"; that on May 25, 1961, Oakes called at his place of business and asked to have the summons and complaint which was served upon him to take them to his attorney in Colton; that he (Fronaberger) gave Oakes the summons and complaint, which Oakes took at that time; that about May 30, 1961, he received a letter from William O. Lewis, an attorney in Colton, dated May 29, 1961, in which Lewis stated that a default had been entered against him (Fronaberger) for failing to file an appearance in the action; that this was the first notice he had of the fact that his defense had not been taken care of by his codefendant Oakes or that no appearance had been filed in his behalf; that during this period of time leading up to his default, he had been under the impression, and relied solely upon representations given to him by his codefendant Oakes to the effect that he (Oakes) would see to it that an appearance in the action would be made on his behalf and that his (Oakes') attorney, William O. Lewis, advised him that he had a good defense to the action and an answer was prepared accordingly.

Defendant Bakker averred that at the time he was served with summons and complaint the woman who handed him the papers asked his name; that he told her and she said that he was being served as a John Doe; that immediately thereafter he opened the papers and read them and observed that they were a summons and complaint involving his employer, Don Oakes, who was being sued by the Stouts for entering their premises and removing furniture and other property; that the very next day he handed the papers to his employer (Oakes) and asked him what he should do about them; that at that time Oakes stated substantially to the effect that he would take care of everything and would have an appearance entered for him (Bakker) by his attorneys and that was the last he saw of the summons and complaint; that since Oakes was his employer, he relied solely upon his representations, made in good faith, that he would see that an appearance in the action was made in his (Bakker's) behalf through attorneys whom he had previously employed; that it was not until he received a letter, about May 30, 1961, from Attorney Lewis, that he was aware of the fact that no appearance had been made in his behalf.

Don Oakes stated that he employs Bakker as manager of his lumber company; that about April 28, 1961, he was advised by telephone by Fronaberger that Fronaberger had been served with summons and complaint in that action and he told Fronaberger that he would take care of filing the appearance for him through his attorneys; that two or three days later he saw Fronaberger and told him that he would take care of everything and have his attorneys file an appearance in the action for Fronaberger; that about April 28, 1961, Bakker was served with summons and complaint and the next day he was advised by Bakker that the complaint and summons had been served upon him; that he informed Bakker that he would take care of having an appearance made for him through his attorneys; that at all such times he acted honestly and in good faith, being under the impression that since the case originally was filed in Los Angeles County, he had 30 days within which to file the appearance for Bakker and Fronaberger in this action and that he did not advise his attorneys that Fronaberger and Bakker had been served until after the defaults had been entered by the clerk of the court.

Attorney Lewis related that he was attorney for Oakes and respondents Fronaberger and Bakker; that on May 25, 1961,

Bakker came to his office, left a copy of the summons and complaint which was served upon him on April 28, 1961, and that Bakker advised him that a copy of the summons and complaint had also been served on Fronaberger on the same day; that this was the first knowledge he had that Bakker and Fronaberger had been served with summons and complaint or that they had any intention of relying on his office to represent them in the case; that on the occasion of the visit of Bakker to his office on May 25, 1961, he checked with the clerk of the court and was advised that defaults had been entered against both Bakker and Fronaberger on May 23, 1961, and that on May 29 he wrote to them advising them of the fact that defaults had been entered against them, and that his office did not consider that it had been retained by either of them up until that time in relation to the present case; that thereafter, on August 17, 1961, his office was retained by Bakker and Fronaberger to file the respective motions to set aside the default judgments entered against them in this matter. On September 11, 1961, the motions were granted.

Plaintiffs state in their brief that they do not urge that respondents were derelict in the earlier period in relying on the codefendant to have his attorney appear for them, but that when the default was entered and they were notified by letter that the promise had not been kept, the defendants themselves had the responsibility of doing whatever they wanted done about it, and that they did nothing for practically three months, and that this unexplained delay would make it necessary for the case to be reversed, relying upon such authority as *Bruskey* v. *Bruskey,* 4 Cal.App.2d 472 [41 P.2d 203]; *Benjamin* v. *Dalmo Mfg. Co.,* 31 Cal.2d 523 [190 P.2d 593]; *Caton* v. *Caton,* 131 Cal.App.2d 451 [280 P.2d 876]; *Beall* v. *Munson,* 204 Cal.App.2d 396 [22 Cal.Rptr. 333].

It appears that these particular defendants believed that their employer was taking care of the matter for them through his attorney and they were often assured of this fact by him. It was not until May 30, 1961 that they had their first notice of the defaults, in the form of a letter from their employer's attorney, who had appeared in the action for their employer. It is not altogether clear from the affidavits why these defendants did not sooner employ Mr. Lewis or some other attorney to represent them soon thereafter on a motion to set aside the defaults and judgments. The record does indicate that, notwithstanding the attorney's letter, received May 30,

1961, they still relied upon their employer, Don Oakes, to properly arrange with his attorney for their defense. Judging from the nature of the action, their employer might well be expected to assume this burden but he failed to do it, at least up to the time his attorney was finally employed to appear for them. Considering what is a reasonable time depends largely upon the facts and circumstances of each case.

█ The general rule is to favor, wherever possible, a hearing on the merits, and appellate courts are much more disposed to affirm an order where the result is to compel a trial upon the merits than it is when a judgment by default is allowed to stand and it appears that a substantial defense could be made. (*Waybright* v. *Anderson*, 200 Cal. 374, 377 [253 P. 148]; 29 Cal.Jur.2d 87.) █ Ordinarily, abuse of discretion must be shown before reversing such an order. (*Berri* v. *Rogero*, 168 Cal. 736, 740 [145 P. 95]; *Kramer* v. *Superior Court*, 36 Cal.2d 159, 162 [222 P.2d 874].) In *Baxter* v. *Prescott*, 158 Cal.App.2d 531 [322 P.2d 1008], it was held that from August 3 to October 9 was not an unreasonable delay to employ counsel and prepare papers for a motion for relief under Code of Civil Procedure, section 473. See also *Buck* v. *Buck*, 126 Cal.App.2d 137 [271 P.2d 628]. In *Santa Barbara Live Stock & Farming Co.* v. *Thompson*, 46 Cal. 63, and *Newton* v. *De Armond*, 60 Cal.App. 231 [212 P. 630], it was held that if there are two defendants and one of them is not a real party in interest and relies on the promise of the other to defend the action, and for that reason is defaulted, it is not an abuse of discretion for the court to open the default as to him.

█ On the question of diligence, the showing was not entirely satisfactory, but was not so fatally defective as to justify the conclusion that the court below abused its discretion in opening the default. (*Santa Barbara Live Stock & Farming Co.* v. *Thompson, supra,* 46 Cal. 63.) See also *Montijo* v. *Robert Sherer & Co.*, 5 Cal.App. 736 [91 P. 261]; *Daniels* v. *Colkins*, 201 Cal. 10 [255 P. 182]; *Hollywood Garment Corp.* v. *J. Beckerman, Inc.*, 61 Cal.App.2d 658 [143 P.2d 738]; *Svistunoff* v. *Svistunoff*, 108 Cal.App.2d 638 [239 P. 2d 650]; *Waite* v. *Southern Pacific Co.*, 192 Cal. 467 [221 P. 204]; *Roseborough* v. *Campbell*, 46 Cal.App.2d 257 [115 P.2d 839]; *Troncale* v. *Troncale*, 179 Cal.App.2d 86 [3 Cal. Rptr. 474]; *Smith* v. *Pelton Water Wheel Co.*, 151 Cal. 394 [90 P. 934].

It appears that four other defendants are still awaiting trial on the merits of this action. The trial court may well have believed from the pleadings that these defendants may successfully defend against this action and that if the default judgments were allowed to stand it would severely penalize these two defendants who might also be successful in the defense of the action. It does not appear that plaintiffs' rights would be unjustly affected by the actions of the trial court in granting the relief requested. The motions were made well within the six-month period allowed under Code of Civil Procedure, section 473. No abuse of discretion appears.

Order setting aside defaults and default judgments affirmed.

Coughlin, J., concurred.