[L.A. No. 28497. In Bank. Jan. 19, 1966.]

HARRY WEITZ, Plaintiff and Appellant, v. JOHN JOSEPH YANKOSKY, Defendant and Respondent.

Memel, Memel, Jacobs & Weissburg and Stanley K. Jacobs for Plaintiff and Appellant.

Kinkle, Rodiger, Graf & Dewberry and William B. Rodiger for Defendant and Respondent.

PETERS, J.—Plaintiff Weitz appeals from an order granting a motion to set aside a default judgment against defendant Yankosky.

The facts set forth in the affidavits and points and authorities of the parties are as follows:

On April 19, 1961, defendant backed his automobile out of a private driveway, and plaintiff, in his automobile, ran into defendant's car. After reporting the accident to the police

department, defendant telephoned his insurance agent, Mr. Needham, informing him of the accident. Defendant then filed an SR-1 form with the Department of Motor Vehicles, stating that he had an automobile liability insurance policy with Trinity Universal Insurance Company.

Sometime in May, defendant was contacted by Allstate Insurance Co., plaintiff's insurance carrier. A settlement was agreed upon, under which Allstate paid defendant for his property damage and over $300 for his personal injuries. Defendant thought that this ended the matter. But it did not.

On June 2 plaintiff filed an action against defendant based on the accident. A summons and complaint were served on defendant on June 4. Following the instructions in his insurance policy, he then (on the same day) mailed the summons and complaint to Trinity at its home office in Dallas, Texas. At this time he was not aware that Trinity had a claims office in Los Angeles. The summons and complaint were never received by Trinity in Dallas.

On November 17, 1961, a request for entry of default was filed, and on May 31, 1962, a default judgment was entered against defendant in the amount of $5,177.75 plus costs. Defendant was not notified and had no knowledge of these proceedings.

After defendant mailed the summons and complaint, he made no inquiry of Trinity as to the status of the case because "I had thought I had settled with the insurance company [Allstate] and I didn't inquire, and the time lapse was a great deal of time and I thought that it was all taken care of." Defendant averred in his affidavit that until April of 1963 he "had no knowledge that any default judgment had been taken against him and continued to believe that the insurance carrier had either disposed of the matter or was handling it without contacting him."

He next heard of the problem on December 23, 1962, when he received a notice from the Department of Motor Vehicles that his driver's license was to be revoked shortly because there was an unpaid judgment outstanding against him. On January 2 or 3, 1963, he went to see Mr. Needham, the agent who had sold him the insurance policy. Defendant told Needham he thought the matter had been taken care of. Needham said he would check on it. He then phoned Trinity (not specified which office, Dallas or Los Angeles). An employee of Trinity stated that, as far as its records showed, the matter

had been taken care of, that there was no record of a judgment, and that there must have been some sort of "clerical error." Needham told defendant to get a financial responsibility form from the Department of Motor Vehicles, complete it and send it in, which defendant did. At this same meeting, Needham apparently informed defendant that Trinity had an office in Los Angeles.

Towards the end of February or the beginning of March, the financial responsibility form was returned by the state to defendant with instructions that it was necessary for Trinity to sign it. Defendant then went to Trinity's Los Angeles office for this signature. When he got there, Mr. McCormick was assigned as his adjuster. Defendant told McCormick all of the facts, and McCormick said that he would contact the Dallas office and take care of the matter.

Defendant's license had been revoked on December 25, 1962. After the above conversation with McCormick, defendant turned in his license to the Department of Motor Vehicles.

On March 25, 1963, plaintiff's attorney, Mr. Jacobs, wrote to defendant and asked him to contact Jacobs. About April 1, defendant went to Jacob's office and was advised by Jacobs of the default judgment and was also advised to contact his insurance company for immediate assistance "and/or" to retain a private attorney.

Defendant knew a lawyer by the name of Cassman who did work for his employer. Defendant spoke to Cassman and asked him to help him, but he did not employ him. Cassman called Jacobs sometime in April, and Jacobs explained the facts to him. Nothing further was done by Cassman.

After defendant had spoken to Jacobs on April 1, he went directly to McCormick who said he would look into the matter. Thereafter, defendant had further telephone conversations with McCormick about the case. In these conversations defendant learned that Trinity had not received the summons and complaint.

On April 18, McCormick phoned Jacobs and asked for a meeting. The two met on April 22, and McCormick requested that the default be set aside, which request was refused. Jacobs demanded payment and threatened to bring a direct action against Trinity under Insurance Code section 11580 to recover the amount of the default judgment. McCormick said that Trinity would defend such a suit on the ground that

defendant had not cooperated. He did not then state that he intended to make a motion to set aside the default.

On April 24, Jacobs sent a demand letter to Trinity. Apparently receiving no satisfactory reply, he filed for plaintiff a direct action against Trinity on May 1, serving summons and complaint on Trinity on June 7. Trinity answered on June 18, 1963, denying the essential allegations of the complaint and setting up an affirmative defense of lack of co-operation on the part of the insured.

It does not appear when defendant learned of the break-down in negotiations between Jacobs and McCormick, of the filing of the direct action against Trinity, or of the answer filed by Trinity asserting the defense of lack of cooperation.

During the first week in July, McCormick came to defendant's place of work to speak with him. At this meeting, defendant signed a "reservation of rights" agreement to the effect that Trinity was not waiving any defenses against defendant by helping him to set aside the default judgment.

On July 23, plaintiff took defendant's deposition as part of the plaintiff's action against Trinity. Defendant then learned that Trinity had employed an attorney, Mr. Alsop, to represent him in trying to set aside the default judgment. Also at that time, Jacobs first learned that Alsop intended to move to set aside the judgment against defendant.

Plaintiff received notice of defendant's intended motion to set aside the default judgment on August 1. The notice was filed on August 9, 1963, and, pursuant to the notice, the motion was made on August 30.

At no time was a demand for payment made directly to defendant.

The trial court found the relevant facts in favor of defendant and granted the motion to set aside the default judgment. A reconsideration was denied.

 A motion to set aside a default judgment is addressed to the sound discretion of the trial court, and, in the absence of a clear showing of abuse of discretion where the trial court grants the motion, the appellate court will not disturb the order. It is the policy of the law to favor, wherever possible, a hearing on the merits, and appellate courts are much more disposed to affirm an order where the result is to compel a trial upon the merits than they are when the judgment by default is allowed to stand and it appears that a substantial defense could be made. Stated another

way, the policy of the law is to have every litigated case tried upon its merits, and it looks with disfavor upon a party, who, regardless of the merits of the case, attempts to take advantage of the mistake, surprise, inadvertence, or neglect of his adversary. (*Freeman* v. *Goldberg,* 55 Cal.2d 622, 625 [12 Cal.Rptr. 668, 361 P.2d 244]; *Waybright* v. *Anderson,* 200 Cal. 374, 377 [253 P. 148]; *Berri* v. *Rogero,* 168 Cal. 736, 740 [145 P. 95]; *Crane* v. *Kampe,* 225 Cal.App.2d 200, 204-205 [37 Cal.Rptr. 220]; *Stout* v. *Bakker,* 212 Cal.App.2d 78, 82-83 [27 Cal.Rptr. 661]; see *Benjamin* v. *Dalmo Mfg. Co.,* 31 Cal.2d 523, 525 [190 P.2d 593].)

As defendant's motion was made more than six months after the default was entered, it was not directed to the court's statutory power to grant relief for mistake or excusable neglect under Code of Civil Procedure section 473.[1] (*Phillips* v. *Trusheim,* 25 Cal.2d 913, 917 [156 P.2d 25]; *Thompson* v. *Vallembois,* 216 Cal.App.2d 21, 24 [30 Cal. Rptr. 796].) It was directed to the court's inherent equity power under which, apart from its statutory authority, the court has the power to grant relief from a default judgment where there has been "extrinsic" fraud or mistake. (*Hallett* v. *Slaughter,* 22 Cal.2d 552, 557 [140 P.2d 3]; *Olivera* v. *Grace,* 19 Cal.2d 570, 574-575 [122 P.2d 564, 140 A.L.R. 1328]; *Hill* v. *Johnson,* 194 Cal.App.2d 779, 781-782 [15 Cal. Rptr. 236].)

Where a default is entered because defendant has relied upon a codefendant or other interested party to defend, the question is whether the defendant was reasonably justified under the circumstances in his reliance or whether his neglect to attend to the matter was inexcusable. (*Santa Barbara Live Stock & Farming Co.* v. *Thompson,* 46 Cal. 63, 64; *Crane* v. *Kampe, supra,* 225 Cal.App.2d 200, 205-207; *Stout* v. *Bakker, supra,* 212 Cal.App.2d 78, 82-83; *Montijo* v. *Robert Sherer & Co.,* 5 Cal.App. 736, 738-739 [91 P. 261]; see 1 Freeman on Judgments (5th ed. 1925) § 246, pp. 492-494.) This rule has been held applicable where an insured relied

---

[1]Section 473 provides in part: "The court may, upon such terms as may be just, relieve a party or his legal representative from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect. Application for such relief must be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted, and must be made within a reasonable time, in no case exceeding six months, after such judgment, order or proceeding was taken. . . ."

upon his insurer to defend. (*Pelegrinelli* v. *McCloud River Lbr. Co.*, 1 Cal.App. 593, 594 et seq. [82 P. 695].)

█ With regard to whether the circumstances warranted reliance by the defendant on a third party, the efforts made by the defendant to obtain a defense by the third party are, of course, relevant. Reliance upon the mail or ministerial acts by other persons in order to assert a defense has been held justified in several cases. In *Hallett* v. *Slaughter, supra*, 22 Cal.2d 552, 556-558, an equity case, it was held that the apparent loss in the mail of an answer on its way to court was an excusable extrinsic mistake. (See also *Freeman* v. *Goldberg, supra*, 55 Cal.2d 622, 625.) *Benjamin* v. *Dalmo Mfg. Co., supra*, 31 Cal.2d 523, a section 473 case, is even stronger. There it was held that there was a good excuse where defendant's secretary misunderstood defendant's instruction to send a complaint and summons to defendant's attorney and instead put it in defendant's files. Similarly, in *Turner* v. *Allen*, 189 Cal.App.2d 753 [11 Cal.Rptr. 630], an equity action, an attorney representing an individual and a corporation intended to answer for both but inadvertently failed to put the corporation's name on the answer. This was held to be excusable, and the court affirmed the trial court's order setting aside a default judgment against the corporation.

█ In the present case defendant acted reasonably in assuming that Trinity would defend and in following the instructions in his insurance policy to mail any summons and complaint to Trinity at Dallas, and the trial court could properly conclude that the failure of these documents to arrive was neither defendant's nor Trinity's fault. There is no showing that plaintiff was in any way prejudiced by defendant's failure to answer on time. Even if the mistake were caused by *some* negligence on defendant's part, this negligence might be excused if it in no way prejudiced the opposing party. (*Benjamin* v. *Dalmo Mfg. Co., supra*, 31 Cal. 2d 523, 531; *Hallett* v. *Slaughter, supra*, 22 Cal.2d 552, 556-557; *Soule* v. *Bacon*, 150 Cal. 495, 497 [89 P. 324].)

Thus, the trial court did not abuse its discretion in holding that defendant's failure to answer on time was due to an excusable extrinsic mistake.

█ It remains to be determined, however, whether defendant is barred from relief due to delay in moving to set aside the judgment. █ One moving in equity to set aside a default judgment must act diligently in making his motion

after he learns of the default judgment. This requirement is sometimes put in terms of laches (see *Hallett* v. *Slaughter, supra,* 22 Cal.2d 552, 557; *Corcoran* v. *City of Los Angeles,* 153 Cal.App.2d 852, 856 [315 P.2d 439]), but this is not the appropriate doctrine, because laches requires a finding of prejudice caused by the delay (*Abbott* v. *City of Los Angeles,* 50 Cal.2d 438, 459 [326 P.2d 484]; *Newport* v. *Hatton,* 195 Cal. 132, 148 [231 P. 987]). It was held in *Benjamin* v. *Dalmo Mfg. Co., supra,* 31 Cal.2d 523, 531, that, on a motion made under section 473, the movant must show that relief was sought within a "reasonable time," whether or not the other party suffered any prejudice from the delay, although "where 'the plaintiff files no counteraffidavit and makes no showing that he has suffered any prejudice or that injustice will result from the trial of the case upon its merits, very slight evidence will be required to justify a court in setting aside the default'. . . ." If lack of prejudice will not automatically enable one to succeed when making a motion under section 473, it should not *automatically* enable one who *fails* to make his motion within six months of the default to set aside the judgment by appealing to the *equity* powers of the court. To hold otherwise would encourage litigants to wait until the six-month period elapses before moving to set a default judgment aside. ▉ To the extent that the court's equity power to grant relief differs from its power under section 473, the equity power must be considered narrower, not wider. (See *Wattson* v. *Dillon,* 6 Cal.2d 33, 42 [56 P.2d 220].)

▉ Accordingly, the fact that plaintiff fails to show any prejudice resulting from defendant's claimed lack of diligence, although important, is not decisive. Lack of prejudice is *one* of the factors the trial court may properly consider in determining whether defendant acted diligently.

The other factor to be considered is whether defendant in the light of the circumstances known to him acted unreasonably in not filing the motion to set aside the default judgment earlier. ▉ As already pointed out, a court, in determining whether a default judgment was secured by excusable extrinsic mistake, may properly determine that the defendant's conduct was excusable where he relied upon another interested party to assert the defense and his reliance was reasonably justified under the circumstances. In our opinion, the same considerations are applicable in determin-

ing whether a delay in moving to set aside a default judgment is excusable.

It bears emphasis that defendant, when he first learned of the judgment against him, was in a position analogous to that of a nominal party. He had settled his claim for damages (the trial court referred to this as a "disarming factor"); he had liability insurance and thus could reasonably assume that the real parties in interest were plaintiff and Trinity, and that Trinity would either pay the judgment or otherwise deal with the matter. When defendant received the notice from the Department of Motor Vehicles, he consulted his insurance agent within a few days and, as we have seen, was told that a check of the insurer's records indicated that there was a "clerical error." The adjuster of the insurer subsequently assured him that he would look into the matter and that it would be taken care of, and, so far as appears, it was not until the first week in July of 1963, when Trinity sought the reservation of rights, that defendant learned that his liability might not be embraced within the insurer's liability and that there was a possibility that he would not be indemnified by the insurer. Defendant told plaintiff of his intent to file a motion to set aside the default judgment within three weeks thereafter.

Under the circumstances the trial court could properly conclude that defendant was justified in relying upon Trinity to take all necessary steps to act in his and its own behalf until the first week in July of 1963; that delays attributable to Trinity during that period should not prejudice defendant; that defendant's delay until July was sufficiently explained, and that the delay between the first week of July and the filing of the motion on August 9 was not unreasonable. (*Hallett* v. *Slaughter, supra,* 22 Cal.2d 552, 557.) Although the showing of diligence is not strong, it was not unreasonable for the trial court to have resolved any doubt it may have had in favor of permitting an adjudication on the merits. (See *Arnke* v. *Lazzari Fuel Co.,* 202 Cal.App.2d 278, 282 [20 Cal.Rptr. 762] ; see also *Freeman* v. *Goldberg, supra,* 55 Cal. 2d 622, 625.)

The case of *Benjamin* v. *Dalmo Mfg. Co., supra,* 31 Cal.2d 523, 528 et seq., is not controlling. There the delay in seeking relief from the default was apparently attributable to the defendant's private attorney, and with regard to motions to set aside default judgments, cases involving reliance upon

attorneys have been treated differently from those involving reliance upon other third parties. (See 1 Freeman on Judgments, *supra*, § 246, pp. 492-494, § 248, pp. 495-499.)

 Plaintiff contends that the court erred in not ordering defendant to reimburse him for costs incurred in connection with the default judgment. Section 473 of the Code of Civil Procedure no longer requires the payment of such costs as a condition to the setting aside of a default judgment on the grounds of mistake, and the allowance of costs under that section rests in the discretion of the trial court. (*Cottrell* v. *Cottrell*, 83 Cal. 457, 459 [23 P. 531].) No reason appears why the same rule should not apply where the default judgment is set aside pursuant to the court's inherent equity power. So far as appears, most of plaintiff's costs were incurred after his attorney refused to agree to have the default set aside. The trial court did not abuse its discretion in denying costs.

The order appealed from is affirmed.

Traynor, C. J., McComb, J., Tobriner, J., Peek, J., Mosk, J., and Burke, J., concurred.