Filed 6/3/16  Haddad v. Willis CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KHOSROW HADDAD,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>LILLIYA G. WILLIS,<br><br>        Defendant and Appellant. | A145369<br><br>(Contra Costa County<br>Super. Ct. No. MSC1401218) |

Appellant Lilliya G. Willis (Willis), in propria persona, appeals from the trial court's order denying her motion to set aside a default and default judgment entered in favor of respondent Khosrow Haddad (Haddad) and against Willis.  She contends the default and default judgment were the result of excusable neglect or mistake, or were procured by fraud.  We reject the contention and affirm the order.

**FACTUAL AND PROCEDURAL BACKGROUND**

On June 25, 2014, Haddad filed a complaint against Willis alleging breach of contract, quiet title, accounting, unjust enrichment, partition, declaratory relief, imposition of constructive trust, and ouster.  He filed a notice of lis pendens the same day.  He alleged in his complaint that he and Willis were joint owners of a single family home (the Property) located in Antioch, California.  On or about December 11, 2011, they agreed to live in the Property together.  Haddad would pay for two-thirds of the costs and expenses related to the Property—including the down payment, mortgage, taxes, insurance, and improvements—and would own two-thirds of the Property.  Willis would pay for one-third of the costs and expenses related to the Property, and would own

1

one-third of the Property.  If one party contributed more than his or her share, that party would receive a corresponding additional interest in the Property.

Based on the agreement, Haddad executed a grant deed transferring two-thirds of the interest in the Property to his personal trust and one-third of the interest to Willis. Haddad paid $140,000 towards the down payment and Willis paid $30,013 towards the down payment.  They agreed Willis would reimburse Haddad for the additional $46,666 she was required to pay towards the down payment so that she would retain her one-third interest in the Property.  Willis never reimbursed him the $40,666, and thereafter failed to pay for one-third of the monthly mortgage.  Haddad also contributed over $225,000 in improvements to the Property, but Willis did not reimburse him one-third of that cost.

On May 15, 2014, Willis excluded Haddad from the Property and took sole and exclusive possession of it.  She refused to allow him to enter, yet expected him to continue paying the costs and expenses related to the Property, including the mortgage, which was in his name only.  In his complaint, Haddad sought, among other things, an accounting of all property acquired by the parties, division of property, transfer of title or compensatory damages in the alternative, a partition by sale, a judicial determination as to his right, title and interest to the Property, and an order declaring that Willis was holding the Property in trust for Haddad.  The summons and complaint and other related documents were served on Willis by a registered California process server on July 12, 2014.  On August 12, 2014, Haddad filed a request for entry of default, which he served on Willis by mail the same day.  The trial court granted the request.

Thereafter, on October 30, 2014, Haddad filed a request for a default judgment seeking declaratory relief "or decree, that [Willis] has no right, title, or interest, in the real property" and that her "alleged Deed to the Property is null, void, and of no effect." Haddad also sought "a Judgment of Ejectment to remove Willis from the Property which she wrongfully possesses and [from which she] has ousted [Haddad]."  Haddad submitted a declaration setting forth detailed information regarding the purchase, the loan, and the parties' agreement.  He attached to his declaration a copy of the grant deed, loan

documents, and copies of receipts and credit card statements for the various expenses he incurred in improving the Property.

On November 12, 2014, the trial court granted Haddad's request and entered a default judgment in favor of Haddad and against Willis. It ordered, declared and adjudged that Haddad held 100 percent of the interest in the Property and that Willis had no interest in the Property. It declared the grant deed null and void and of no effect. It ordered that Haddad shall recover exclusive possession of the Property, and that a writ of execution shall issue directing the removal of Willis from the Property. A Notice of Entry of Judgment was served by mail on Willis on November 14, 2014.

On March 3, 2015, Willis filed a motion "to set aside unlawful detainer default," challenging the entry of default and default judgment. She declared she had a one-third interest in the Property and was lawfully residing in it when Haddad filed his action and obtained a default and default judgment against her. She made a $30,000 down payment on the Property and also "added value to the property through [her] labor (remodeling, interior design, and landscaping)." She was "locked . . . out" of the Property on January 31, 2015, and had nowhere to stay. Haddad refused to allow her inside to retrieve her car, identification, computer, clothing, and other personal belongings, as well as paintings worth $350,000.

She declared she had previously paid the couple's expenses when they lived together in Napa and had paid $1,800 per month in rent and utility bills, "exhausting my savings as I did not have income." While they were living in Napa, Haddad suggested they purchase a home and share equal ownership in the home. A year later, Haddad "suppressed my ownership from half to 1/3, swearing on his mother's grave that he will treat me very good and I never would regret anything if I let him to have his way." Haddad "induced me to purchase the subject property and to cohabitate with him by promising me that he would always take care of me. Plaintiff has breached his promise to support me and has now breached his promise for me to enjoy the ownership and the subject property with one-third of the ownership."

3

Willis declared, "I do not believe I received proper notice of the action." "While I received some papers that I now understand were related to this unlawful detainer action, I did not understand the papers and my obligation to respond within a particular time. I mistakenly thought Plaintiff was threatening me and bluffing with court action and not actually engaged in an official legal action against me as I never have received one paper that actually came from the court." She did not believe she had "all the papers related to this action" and believed she "misunderstood the meaning of the copy of the judgment I saw, because it said 'proposed.' I expected at least something with an original signature of a judge and envelope coming directly from the court house."

Willis argued the judgment should be set aside based on "excusable mistake and/or excusable neglect." Citing Code of Civil Procedure section 473, subdivision (b), Willis argued she failed to respond due to a "mistake of fact as to the papers" because she thought they were merely a "threat of legal action by . . . Haddad and not real court papers." She "made an honest mistake of law" because she is "not familiar with unlawful detainer laws, and speaks English as a second language." She argued she was also entitled to relief under Code of Civil Procedure, section 1179, which allows the court to "relieve a tenant against a forfeiture of a lease or rental agreement." She asserted that Haddad fraudulently induced her to pay the $30,000 down payment by promising to "always take care of [her] and let [her] live in the property, and that she would be a one-third owner of the property."

In her answer to the complaint, Willis declared that Haddad "locked her out from her home in pajamas only" and that she was thereafter taken to an emergency room and another hospital where she was diagnosed with adjustment disorder. She was an artist and had no family or a place to stay. She asked the court to "[r]estore [her] to her former premises due to extreme hardship" and allow her to "have roommates in the house" so she could pay the mortgage and property taxes.

4

Haddad filed an opposition to the motion on May 1, 2015.[1]  He argued that Willis's request was time-barred and also failed on the merits because she had not shown excusable neglect or mistake, and had not described any extrinsic fraud that prevented her from defending the action.  He argued that all of the alleged fraudulent acts to which Willis referred related to the merits of the underlying complaint, and not to the issue of whether she was entitled to equitable relief.

The trial court issued a tentative ruling, which it adopted as it order on May 14, 2015.  The court ruled:  "Defendant's motion to set aside the default and default judgment is denied.  The motion is untimely under CCP 473(b).  In addition, defendant has failed to allege extrinsic fraud for purposes of obtaining equitable relief from the default."

## DISCUSSION

Willis contends the order must be reversed because the default and default judgment were the result of excusable neglect or mistake under Code of Civil Procedure, section 473,[2] subdivision (b), or were procured by fraud, entitling her to equitable relief.  We disagree.

Section 473, subdivision (b), provides in part:  "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect.  Application for this relief shall be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted, and shall be made within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken."  The six-month time limitation of section 473 is jurisdictional; the court has

---

[1]Willis asserts the opposition was not timely filed, but the record shows it was filed nine court days before the hearing.  It was therefore timely under Code of Civil Procedure, section 1005, subdivision (b), which provides that oppositions must be filed and served "at least nine court days . . . before the hearing."

[2]All further statutory references are to the Code of Civil Procedure unless otherwise stated.

5

no power to grant relief under section 473 once the time has lapsed. (*Rutan v. Summit Sports, Inc*. (1985) 173 Cal.App.3d 965, 970 (*Rutan*).)

The six-month period begins to run when the clerk enters *the default*, not when the default judgment is entered, unless the defendant is seeking relief only from the default judgment, and not the default. (*Rutan*, *supra*, 173 Cal.App.3d at p. 970; *Nemeth v. Trumbull* (1963) 220 Cal.App.2d 788, 791.) "[The] [r]eason for the rule is that vacation of the judgment alone would be an idle act; if the judgment is set aside the default would remain and permit immediate entry of another judgment giving the plaintiff the relief to which his complaint entitles him." (*Nemeth v. Trumbull*, *supra*, 220 Cal.App.2d at pp. 791–792.) "The reason for the rule disappears where the objective of the motion is to vacate a portion of the judgment in excess of that demanded by the complaint . . . Possibly, then, . . . the 6-month period should be computed from the date of the judgment . . . ." (*Id*. at p. 792.)

Here, Willis seeks relief from both the default and the default judgment. Moreover, she does not assert—nor does the record support a finding—that Haddad obtained anything in the default judgment that was "in excess of that demanded by the complaint." Thus, even if Willis were to successfully challenge the default judgment, to do so would be "an idle act" because the default would remain, and Haddad would be able to immediately obtain another default judgment. Accordingly, the six-month period in this case commenced on August 12, 2014, the date of entry of default. Her motion to set aside the default and default judgment, filed March 3, 2015, therefore fell outside the jurisdictional six-month time limitation of section 473.[3]

---

[3]We note that even if Willis were challenging only the entry of the default judgment and not the default, her section 473 claim would fail on the merits. She asserts her lack of knowledge of the law and limited English skills prevented her from fully appreciating the nature or effect of the unlawful detainer papers. A trial court, however, does not have the authority to asset aside a default judgment on the ground that the defendant did not realize the legal effect of failing to file an answer. (*Yarbrough v. Yarbrough* (1956) 144 Cal.App.2d 610, 615.)

Even after the six-month period has passed, however, a trial court may still vacate a default on equitable grounds. This is because courts have the inherent authority to grant relief from defaults or default judgments procured by extrinsic fraud. (*Weitz v. Yankosky* (1966) 63 Cal.2d 849, 855; *Aldrich v. San Fernando Valley Lumber Co.* (1985) 170 Cal.App.3d 725, 737.)

A trial court may grant relief under its inherent equity power if the aggrieved party was prevented from presenting a claim or defense because of the fraud of the opponent. (*In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1068; *DeMello v. Souza* (1973) 36 Cal.App.3d 79, 85.) "Two essential conditions are found in a classic case in equity which seeks to set aside a judgment: first, the judgment is one entered against a party by default under circumstances which prevented him from presenting his case; second, these circumstances result from extrinsic fraud practiced by the other party or his attorney." (*Otani v. Kisling* (1963) 219 Cal.App.2d 438, 442.)

A party who seeks to have a default or default judgment vacated under the trial court's equity power must make a stronger showing than is necessary to obtain relief under section 473. (*Gribin Von Dyl & Associates, Inc. v. Kovalsky* (1986) 185 Cal.App.3d 653, 660.) "[D]uring the period when relief under section 473 is available, there is a strong public policy in favor of granting relief and allowing the requesting party his or her day in court. Beyond this period there is a strong public policy in favor of the finality of judgments and only in exceptional circumstances should relief be granted." (*In re Marriage of Stevenot*, *supra*, 154 Cal.App.3d 1051, 1071.) We review a challenge to an order denying a motion to vacate on equitable grounds for an abuse of discretion. (*In re Marriage of Park* (1980) 27 Cal.3d 337, 347; *Weitz v. Yankosky*, *supra*, 63 Cal.2d at pp. 854, 856 [the court's discretion to grant equitable relief is narrower, not wider, than its power to grant relief under section 473].)

Willis asserts that Haddad engaged in fraud by agreeing to "always take care of [Willis], treat her in a very good way and that she would be owner of the property. Based on these promise[s], [Willis] paid $30,000 toward down payment of the property and worked full time on remodeling and improving the property for over two years." She

7

asserts these promises also led her to believe that the unlawful detainer papers she received were not "real legal document[s]." To the extent she is arguing that Haddad's statements to her—made before or around the time the parties purchased the Property together—induced her into believing she did not have to respond to the complaint, we conclude the trial court did not abuse its discretion in ruling that these facts did not constitute extrinsic fraud.

To warrant relief from judgment based on fraud, the extrinsic fraud must have brought about the entry of the judgment; for example, by lulling the movant into sacrificing his opportunity to present a defense. (*Hopkins & Carley v. Gens* (2011) 200 Cal.App.4th 1401, 1410.) Examples of extrinsic fraud include the "[f]ailure to give notice of the action to the other party," "[c]onvincing the other party not to obtain counsel because the matter is not going to proceed," and seeking a judgment "after having represented to the other party that it would not proceed without further notice." (*In re Marriage of Stevenot*, *supra*, 154 Cal.App.3d at p. 1051.) Here, Haddad provided proper notice of the proceedings to Willis by having her personally served with the summons and complaint.[4] He notified her of the request for entry of default, and served her with the default judgment. Because there is nothing in the record indicating Haddad or his attorney did anything to prevent Willis from participating in the proceedings, the trial court did not abuse its discretion in denying Willis's request for equitable relief.

### DISPOSITION

The order is affirmed. Respondent Khosrow Haddad shall be entitled to his costs on appeal.

---

[4]Willis asserts on appeal that she never received the summons and complaint because she told the "strange man coming toward me and fetching me papers"—presumably the registered process server—"to get out [of my home] along with his papers." We disregard this claim, which she makes for the first time on appeal, and not under oath. In fact, she suggested below that she had received the papers but that she simply did not understand what they were, or "mistakenly thought [Haddad] was threatening me and bluffing with court action and not actually engaged in an official legal action against me . . . ."

8

_____
McGuiness, P.J.

We concur:

_____
Pollak, J.

_____
Jenkins, J.