Filed 10/20/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MICHELLE KRAMER, | |
| Plaintiff and Appellant, | G058522 |
| v. | (Super. Ct. No. 30-2017-00923311) |
| TRADITIONAL ESCROW, INC., et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from an order of the Superior Court of Orange County, James L. Crandall, Judge. Reversed.

Henry J. Josefsberg for Plaintiff and Appellant.

Stephens Friedland, John B. Stephens and Timothy A. Spivey for Defendants and Respondents.

\*       \*       \*

Plaintiff Michelle Kramer filed this wage and hour lawsuit against her employer, defendants Traditional Escrow, Inc. (Traditional), and its alleged alter ego, Annette Scherrer-Cosner (Cosner; collectively defendants). A few months after defendants answered the initial complaint, their counsel withdrew, and defendants subsequently chose not to participate in this case. Plaintiff continued to serve defendants with all case documents, including an amended complaint, at their address of record. But, in violation of the California Rules of Court, defendants changed their mailing address without giving notice to plaintiff or the trial court. As a result, they did not receive any of the documents that plaintiff served on them after their counsel withdrew. Eventually, default and default judgment were entered against them due to their failure to answer the amended complaint.

Defendants filed a motion to set aside the default and vacate the default judgment, arguing they were entitled to equitable relief because they had been prevented from responding to the amended complaint due to extrinsic fraud and extrinsic mistake. The trial court granted the motion, finding that defendants were unaware the complaint had been amended. It also found that after filing the amended complaint, plaintiff's counsel misrepresented to Cosner's divorce attorney, who was unaffiliated with this matter, that defendants were in default and could not file an answer. Plaintiff appeals the trial court's ruling, arguing equitable relief was unwarranted.

We agree. Equitable relief from a default judgment is reserved for exceptional circumstances. None exist here. To the extent defendants were unaware of the amended complaint, it was due to their own negligence. They chose not to participate in the proceedings. They also missed every document served on them, including the amended complaint, because they failed to inform the trial court and plaintiff of their current mailing address. Indeed, defendants made themselves unreachable by any means. They could not be reached by phone or e-mail, missing multiple phone calls from plaintiff and an e-mail from the trial court. Defendants cannot deliberately neglect this

2

lawsuit and go off-grid, so to speak, and then complain that they lacked notice of the proceedings. Besides, about a month prior to entry of default, defendants received actual notice that an amended complaint had been filed. Yet they did nothing.

Nor is equitable relief warranted based on the alleged misrepresentation made by plaintiff's attorney that defendants were in default. If defendants were misled, it was due to their own negligence. They failed to pay any attention to this lawsuit and missed every notice from plaintiff because they had made themselves unreachable. Moreover, defendants have not explained why they failed to act after the misrepresentation occurred. This lack of diligence bars them from seeking relief.

Simply put, there are no exceptional circumstances warranting relief. Thus, we reverse the trial court's order.


I

FACTS AND PROCEDURAL HISTORY

A. *Defendants Answer Complaint and their Counsel Withdraw*

Plaintiff filed this lawsuit against Traditional and Cosner in May 2017. Traditional was an independent escrow company that provided services throughout Southern California. It stopped operating and wound up its business in 2016. Cosner was one of its principals, whom plaintiff asserted was the alter ego of Traditional.

The initial complaint alleged plaintiff was formerly employed by Traditional as an escrow manager and paid on a salary and commission basis. It sought relief based on two general theories. First, defendants owed plaintiff a $20,030.90 commission payment. Second, defendants misclassified plaintiff as an exempt employee, rather than an hourly worker, and owed her unpaid overtime and premium wages for missed meal and rest breaks. Based on these two theories, the initial complaint set forth several claims to recoup the commission payment, several wage and hour claims, a claim for civil penalties under the Private Attorneys General Act (Lab. Code, § 2698 et seq.;

3

PAGA), and a claim for violation of Business and Professions Code section 17200 (UCL) against defendants.[1] Despite the multiple claims and theories, the only specific sum of money identified in the initial complaint was the $20,030.90 commission payment.

Defendants answered the complaint in September 2017 through their counsel, Miller Miller Menthe, LLP (the Miller firm). Trial was initially set for June 2018. In early April 2018, the Miller Firm filed a motion to withdraw as defendants' counsel and to continue the trial date, which was granted. The court's signed order granting the Miller firm's motion (the withdrawal order) listed Cosner's home in Irvine (the Cosner residence) as defendants' address and also listed their phone number and e-mail address. The withdrawal order also stated there was a mandatory settlement conference on September 28, 2018. The Miller firm served defendants with the withdrawal order by mail on June 19, 2018, at the Cosner residence.[2] Defendants knew their counsel had withdrawn and do not deny receiving the withdrawal order.

*B. First Default Entered and Complaint Amended*

Near the end of June 2018, plaintiff noticed Cosner's deposition for Monday, July 16, 2018, and served Cosner at the Cosner residence. On the Friday before the deposition, plaintiff's counsel, Henry Josefsberg, called Cosner using the phone number listed on the withdrawal order and left a message with the date, time, and location of the deposition. Cosner did not appear at the deposition, so Josefsberg called

---

[1] The specific claims are as follows: (1) failure to pay wages (Lab. Code, §§ 204, 204.2, 210, 216, 218.5, 218.6, 223, 225, 225.5 & 558); (2) illegal withdrawal of wages (Lab. Code, § 221); (3) payment with nonnegotiable funds (Lab. Code, §§ 203.1, 212 & 215); (4) unpaid overtime (Lab. Code, § 1194); (5) unpaid break premiums (Lab Code, §§ 226.7 & 512); (6) inaccurate wage statements (Lab. Code, § 226); (7) conversion; (8) penalties under Labor Code sections 203 and 203.1; (9) UCL violations; and (10) PAGA based on the prior Labor Code violations.

[2] All subsequent service attempts mentioned in this opinion were performed by mail unless otherwise indicated.

4

her again. Cosner did not pick up, so he left a message and then documented Cosner's nonappearance with the court reporter.

Following the missed deposition, plaintiff sent a meet and confer letter to defendants at the Cosner residence. The letter was returned by the United States Postal Service (USPS) with instructions to forward the letter to PO Box 28600 in Anaheim (PO Box 28600). Plaintiff resent the meet and confer letter to defendants at PO Box 28600. The letter was not returned, but plaintiff did not hear anything from defendants. As such, plaintiff filed a motion to compel Cosner's deposition and served defendants at both the Cosner residence and PO Box 28600 on August 9, 2018. Defendants did not oppose the motion to compel or appear at the hearing, so the court granted the motion and issued $3,722.40 in monetary sanctions against Cosner.

Defendants also did not appear at the mandatory settlement conference on September 28, 2018. At the conference, plaintiff made an oral motion to strike defendants' answer, which the court granted. The court also vacated the trial date and set a default prove-up hearing for October 26, 2018. The court issued a minute order with these rulings. The court clerk served defendants with the minute order at the Cosner residence and by e-mailing it to the e-mail address listed on the withdrawal order. Plaintiff also gave formal notice of the court's rulings to defendants at the Cosner residence and PO Box 28600.

Prior to the prove-up hearing, plaintiff filed an ex parte motion for leave to file a first proposed amended complaint (amended complaint). The theories of liability and causes of action in the amended complaint were the same as the initial complaint. The only amendment was to plaintiff's prayer, which was revised to set forth the exact monetary relief sought as required by Code of Civil Procedure section 580.[3] While the prayer in the initial complaint contained boilerplate statements for relief, the amended

---

[3] Further undesignated statutory references are to the Code of Civil Procedure.

5

prayer requested precise amounts for plaintiff's claims and specific sums of attorney fees, costs, and interest. Together, the proposed amended complaint sought over $1.75 million.

Plaintiff served the ex parte motion on defendants at the Cosner residence and PO Box 28600 on October 9, 2018. Josefsberg called defendants that same day using the phone number on the withdrawal order. He left a message informing them that plaintiff would be moving ex parte for leave to file an amended complaint to make "substantive amendments to the Prayer of the original Complaint dollar amounts of damages, penalties, and interest." Josefsberg also stated the date, time, and location of the hearing.

Defendants did not appear at the ex parte hearing, and the trial court granted the ex parte motion and deemed the amended complaint filed. It also executed plaintiff's proposed order with revisions. The proposed order, which had been served on defendants with the ex parte motion, stated that defendants were not entitled to file any responsive pleadings to the complaint and that their answer had been stricken. The court struck these portions and made its own interlineations. Thus, the signed order stated that "Defendants are entitled to file any responsive pleadings to the First Amended Complaint." The order did not specify defendants' deadline to respond.

Plaintiff served defendants at the Cosner residence and PO Box 28600 with both the amended complaint and notice of the order granting leave to amend, which contained a copy of the signed order. Tracking documents from the USPS show both documents were delivered to both addresses.

## C. The Stipulation and Second Default Entered

While this lawsuit was pending, Cosner was embroiled in a long-running, contentious divorce proceeding. She was represented in the divorce by attorney Paul Nelson. Nelson has never been defendants' counsel of record in this matter.

6

There is some dispute as to what happened next. Nelson states that on November 12, 2018, he received a call from Josefsberg. Josefsberg maintains that Nelson called him. Regardless, as Nelson describes the call, "[Josefsberg] represented that Defendants were in default in this case and that their answer had been stricken. At no time did Josefsberg inform me that he had filed a First Amended Complaint in this case, that the Court had permitted Defendants to respond to that complaint, or that Defendants still had time to respond. [¶] Josefsberg offered to stipulate to set aside the purported order striking Defendants' answer and vacate the default prove-up hearing. In exchange, Josefsberg requested that Cosner sit for deposition and demanded that Cosner pay Josefsberg $10,000 for his fees in preparing the default prove-up papers and $3,600 in previously ordered sanctions." Josefsberg insists he never told Nelson that defendants were in default during this call.

Nelson sent a follow-up e-mail that same day, which stated, "[p]er our phone call today my client is Agreeable to your offer to: set aside the order striking her answer and allow it to stand; vacating the default prove-up heading [*sic*] . . . . [Cosner] will pay $10,000 for your fees re preparation of said motion and the approx. $3600 the Court previously ordered re your motion to compel."

On November 16, Josefsberg sent Nelson an e-mail with a proposed stipulation (the stipulation). Among other things, the stipulation stated that (1) "[t]he operative pleading in this matter is the First Amended Complaint"; (2) "[t]he Court has stricken the Answer of Defendants"; (3) "[t]he Court may, on COSNER's ex parte application, or as the Court may otherwise permit, reverse its Order striking the Answer in this matter, without amendment, as to COSNER only"; (4) "[a]ny defaults in this matter other than as to TRADITIONAL are vacated"; (5) "[n]o other pleadings seeking relief in this matter are permitted based on any matter that has been or could have been raised between or among the Parties, whether as to matters known or unknown as of the time of executing this Stipulation"; and (6) defendants would pay plaintiff $13,722.40 for

7

the discovery sanctions and plaintiff's costs relating to the default prove-up. Josefsberg gave defendants until November 20, 2018, to respond.

Josefsberg did not hear anything from Nelson or defendants by the deadline, so on November 23, 2018, plaintiff filed a request for entry of default, which sought entry of a $1,786,415 judgment against defendants. Plaintiff served defendants with the default request at the Cosner residence and PO Box 28600 and also served it on Nelson via mail. Plaintiff then filed another request for entry of default on December 7, 2018, seeking judgment in the same amount (the reason for the second request is unclear). Again, she served defendants at both addresses and also served Nelson.

Defendants took no action. Thus, the trial court entered defendants' default on December 17, 2018. Plaintiff served the entered default on Cosner at both addresses and on Nelson. The following day, the court set a default prove-up hearing for January 25, 2019.

*D. Defendants Belatedly Return the Stipulation*

On January 10, 2019, nearly two months after their last interaction, Nelson sent Josefsberg an e-mail containing a copy of the stipulation with defendants' signatures and a PDF copy of a $13,722.40 check. Cosner had signed the stipulation on behalf of herself and Traditional. Strangely, though, her signature on the stipulation was dated November 19, 2018. Similarly, the check was dated November 15, 2018. It also listed PO Box 28600 as Cosner's address. Nelson gave no explanation for the date on the documents or for the two-month delay in responding to Josefsberg. He requested that the parties schedule a phone call for the next day.

Josefsberg responded less than an hour later, requesting an explanation as to why the check and stipulation were executed in November 2018. He also stated, "[a]s you know, since [November 2018], I have finalized the default prove up because I received no response to the stipulation in November when first I sent it to you. [¶] Since

8

that time, of course, I have generated more attorney fees and Ms. Cosner's lack of response has only confirmed the wisdom of not allowing her advance-and-retreat tactics to dictate our case progress. [¶] . . . [¶] If you wish to call tomorrow, please feel free, but not until around 230 pm."

Nelson never responded or called. And the stipulation was never filed.

*E. Default Judgment Entered*

Plaintiff filed her brief and supporting evidence for the prove-up hearing on January 25, 2019. The documents were served on defendants at the Cosner residence and PO Box 28600 and also sent to Nelson. Plaintiff subsequently filed a request for entry of a $1,617,201.65 default judgment against defendants on February 5, 2019. This request and a copy of the proposed judgment were again served on defendants at the two addresses and also sent to Nelson.

The trial court entered the $1,617,201.65 default judgment against defendants and in favor of plaintiff on February 8, 2019. That same day, plaintiff gave notice of the entered judgment to defendants at the Cosner residence and PO Box 28600 and also to Nelson. Plaintiff recorded a judgment lien with the Secretary of State against Cosner's personal property in February 2019, and then recorded a judgment lien with the Orange County Recorder's Office in March 2019. In June 2019, plaintiff gave notice of these liens to defendants at the two addresses and also to Nelson. She also gave notice to the attorney for Cosner's husband.

*F. Motion for Relief from Default*

On August 7, 2019, defendants, represented by their current counsel, filed a motion to set aside the default and vacate the default judgment under both section 473, subdivision (b), and under the court's inherent equitable power. The motion was accompanied by declarations from Nelson and Cosner. The Nelson declaration primarily

9

described the November 2018 call between Nelson and Josefsberg discussed above. Nelson also confirmed that he received the stipulation from Josefsberg in November 2018 but did not explain why he waited until January 2019 to respond. In fact, his declaration completely ignored the January 2019 interaction between the two attorneys. Nor did Nelson mention any of the other documents that plaintiff had served on him, such as the request for entry of default.

Cosner's declaration stated that she had not received *any* of the documents that plaintiff had served on defendants or Nelson *after* the Miller firm's withdrawal. She also sought to explain her lack of attention to this case. She stated that her divorce trial was held in JAMS from August 2018 to March 2019 and absorbed nearly all of her attention. She also has posttraumatic stress disorder and anxiety due to a violent crime she suffered in 2014. As a result, she does not drive and only leaves her home when necessary. "[D]ue to [her] mental and physical issues and distraction with the [divorce] trial, [she] did not understand that [the Miller firm's] withdrawal also left [her] without representation and that [she] was potentially personally liable in this action. [She] believed Plaintiff was simply prosecuting this case against a defunct entity."

Cosner further explained that in 2016, she stopped living at the Cosner residence due to poor mental and physical health. She engaged a caregiver and began living with friends and family members in Yorba Linda, La Habra, and Corona. Due to her transitory living situation, she received mail at PO Box 28600, which her caregiver retrieved "sporadically." In late 2018, Cosner failed to make a renewal payment for PO Box 28600 and was forced to change her PO Box number from 28600, where the documents had been served, to 27877. Because of this, she did not receive any documents in this case after the Miller firm withdrew representation and was not aware of the status of this lawsuit. She also claimed not to have seen the amended complaint until "very recently" (the declaration was signed in August 2019) and that she learned of the default judgment in mid-2019. Cosner also stated that "[i]n late 2018, [she] did not have

10

a functioning voicemail box. [She did] not remember exactly but the voicemail box was either not set up or it was full because [she] never checked it."

It was undisputed that defendants did not file any notices of changes to their mailing address or telephone number.

Following oral argument, the trial court granted the motion on October 24, 2019, under its inherent equitable powers. It found the "default and default judgment were the result of extrinsic fraud or mistake, warranting equitable relief." As to extrinsic fraud, the court found "plaintiff's counsel misrepresented numerous facts concerning defendants' status, in what appears largely to be an attempt to exact money and/or concessions from defendants. These misrepresentations included the claim that defendants were in default as of November 2018 (which they were not), and the service of an erroneous notice of ruling on plaintiff's ex parte application, which inaccurately represented the court's order, to the effect that defendants could not file a responsive pleading to the FAC. As a result, defendants' default was taken in December 2018." With regard to the "erroneous notice of ruling," it appears the trial court was referring to the proposed order granting plaintiff's ex parte application for leave to amend, which stated defendants could not respond to the amended complaint. As set forth above, plaintiff served defendants with the signed order granting leave to amend, which stated defendants could respond to the amended complaint.

As to extrinsic mistake, the trial court also found there was "no evidence in the court's file that the First Amended Complaint, which significantly increased defendants' potential damages exposure, was served on defendants after it was deemed filed. While the proposed amended pleading was apparently mailed to defendants' service address of record, defendants clearly did not receive notice of it, and never appeared at the ex parte hearing at which the court granted leave to file it."

11

In this appeal, plaintiff challenges the trial court's order granting defendants' motion for relief from the default and default judgment. (§ 904.1, subd. (a)(2).)

II

DISCUSSION

*A. Standard of Review*

An order granting equitable relief from default is reviewed for an abuse of discretion. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981 (*Rappleyea*).) Under this standard, "'a reviewing court should not disturb the exercise of a trial court's discretion unless it appears that there has been a miscarriage of justice.'" (*Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 80.) Still, "'[a]ll exercises of discretion must be guided by applicable legal principles . . . . [Citations.] If the court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law. [Citation.] Therefore, a discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal.'" (*J.N. v. Superior Court* (2018) 23 Cal.App.5th 706, 714-715.)

Defendants argue that we should review the trial court's ruling under the substantial evidence standard. They cite a decision from this court, which states that when reviewing a judgment set aside for extrinsic fraud, "the standard of review is that a determination of extrinsic evidence is accepted on appeal if supported by substantial evidence [citation], in which case all reasonable inferences from substantial evidence are also drawn in favor of the judgment." (*Estate of Carter* (2003) 111 Cal.App.4th 1139, 1154.)

12

We understand *Estate of Carter*, *supra*, 111 Cal.App.4th 1139, to articulate the standard for a facet of our review. As our Supreme Court explained a few years after *Estate of Carter*, "[t]he abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712.) Within this framework, *Estate of Carter* stands for the proposition that the trial court's findings of fact pertaining to the existence of extrinsic fraud or extrinsic mistake are reviewed for substantial evidence. But our overall review of the trial court's application of those findings is for an abuse of discretion.

Our conclusion is supported by recent formulations of the standard of review, which state the appellate court "review[s] the [trial] court's [ruling on] a motion for equitable relief to vacate a default judgment or order for an abuse of discretion . . . . In doing so, [the appellate court] determine[s] whether the trial court's factual findings are supported by substantial evidence [citation] and independently review[s] its statutory interpretations and legal conclusions . . . . " (*County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1230.) Thus, in reviewing the trial court's *factual findings* in this matter, "our review begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, to support the findings below. [Citations.] In assessing whether any substantial evidence exists, we view the record in the light most favorable to respondents, giving them the benefit of every reasonable inference and resolving all conflicts in their favor." (*Williamson v. Brooks* (2017) 7 Cal.App.5th 1294, 1299.)

13

*B. Applicable Law for Vacating a Judgment*

Though the trial court decided this motion under its inherent equitable powers, we first discuss relief under section 473, subdivision (b), as it provides a helpful background for our analysis. Under this statute, a court may relieve a party from a default or default judgment due to "mistake, inadvertence, surprise, or excusable neglect" if the party files an application for relief within six months from the date of the default. (§ 473, subd. (b); *Manson, Iver & York v. Black* (2009) 176 Cal.App.4th 36, 47 (*Manson*).) "'Section 473 is often applied liberally where the party in default moves promptly to seek relief, and the party opposing the motion will not suffer prejudice if relief is granted. [Citations.] In such situations "very slight evidence will be required to justify a court in setting aside the default." [Citations.] [¶] Moreover, because the law strongly favors trial and disposition on the merits, any doubts in applying section 473 must be resolved in favor of the party seeking relief from default . . . .'" (*Grappo v. McMills* (2017) 11 Cal.App.5th 996, 1005.)

Aside from section 473, subdivision (b), "courts have the inherent authority to vacate a default and default judgment on equitable grounds such as extrinsic fraud or extrinsic mistake." (*Bae v. T.D. Service Co. of Arizona* (2016) 245 Cal.App.4th 89, 97.) The court's ability to grant relief under its inherent power is narrower than its ability to grant relief under section 473, subdivision (b). (*Carroll v. Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 90, fn. 8.) This is especially true after a default judgment has been entered. "A party who seeks to set aside a default judgment pursuant to the court's equity power must make a substantially stronger showing of the excusable nature of his or her neglect than is necessary to obtain relief under . . . section 473." (*In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1074.) As our Supreme Court has explained, "[w]hen a default *judgment* has been obtained, equitable relief may be given only in exceptional circumstances. '[W]hen relief under section 473 is available, there is a strong public policy in favor of granting relief and allowing the requesting party his or

14

her day in court. Beyond this period there is a strong public policy in favor of the finality of judgments and only in *exceptional circumstances* should relief be granted.'" (*Rappleyea*, *supra*, 8 Cal.4th at pp. 981-982, second italics added.)

A party seeking relief under the court's equitable powers must satisfy the elements of a "stringent three-pronged test": (1) a satisfactory excuse for not presenting a defense, (2) a meritorious defense, and (3) diligence in seeking to set aside the default. (*Rappleyea*, *supra*, 8 Cal.4th at pp. 982-983.) As explained below, the trial court erred in finding that defendants established the first and third prong.

### *1. Satisfactory excuse*

"'Although the policy of the law is to favor a hearing on the merits of a case, courts are not required to set aside default judgments for defendants who flagrantly ignore the responsibility to present a defense. . . . The defendant must . . . demonstrate a satisfactory excuse for not responding to the original action in a timely manner.'" (*Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 503-504 (*Cruz*).) A defendant has a satisfactory excuse if it shows that an extrinsic fraud or extrinsic mistake occurred. (*Rappleyea*, *supra*, 8 Cal.4th at pp. 982-983.)

As discussed below, we find the trial court misapplied the law and abused its discretion. It failed to consider that extrinsic fraud and extrinsic mistake are unavailable when a party's own negligence allows the fraud or mistake to occur. Such is the case here. Defendants knew of this lawsuit yet chose not to participate in it. They are responsible for their own lack of awareness of the proceedings in this action. Among other things, they failed to provide notice of changes to their mailing address. This violated the California Rules of Court and caused defendants to miss all the documents plaintiff served on them, including the amended complaint. Defendants also failed to take any action in this case after receiving actual notice that an amended complaint had been filed. Similarly, while defendants argue that Josefsberg's misrepresentation that

15

they were in default constitutes extrinsic fraud, their inability to pay attention to this case allowed the fraud to occur. Further, defendants provide no explanation or evidence showing how the misrepresentation prevented them from defending against this lawsuit.

We do not find an abuse of discretion lightly. While the trial court's desire to have this case heard on its merits is understandable, defendants forfeited this right by choosing to ignore this case and their responsibilities under the California Rules of Court. Their negligence led to the default and default judgment and does not constitute an exceptional circumstance warranting equitable relief.

*a. extrinsic mistake*

"Extrinsic mistake occurs 'when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits.' [Citation.] In contrast with extrinsic fraud, extrinsic mistake exists when the ground of relief is not so much the fraud or other misconduct of one of the parties as it is the excusable neglect of the defaulting party to appear and present his claim or defense. If that neglect results in an unjust judgment, without a fair adversary hearing, the basis for equitable relief on the ground of extrinsic mistake is present. [Citation.] Relief will be denied, however, if the complaining party's negligence permitted the fraud to be practiced or the mistake to occur." (*Manson*, *supra*, 176 Cal.App.4th at p. 47.) Here, the trial court apparently found an extrinsic mistake occurred because there was "no evidence" that plaintiff served defendants with the filed amended complaint or that defendants were aware that the complaint had been amended.

To begin, defendants undeniably knew about this lawsuit. They simply decided not to participate in it after the Miller firm withdrew because they erroneously believed that "Plaintiff was simply prosecuting this case against a defunct entity," and Cosner was unaware that she "was potentially personally liable in this action." Though defendants chose to stop litigating this case, plaintiff did not. She continued to serve defendants with all case-related documents at the Cosner residence, defendants' address

16

of record.  Plaintiff also served defendants at PO Box 28600 after discovering it.  She even began serving Nelson with documents in November 2018, including her requests for entry of default, but defendants do not explain what happened to these documents.[4]

In particular, plaintiff gave defendants multiple notices that she was amending the complaint.  She gave them notice by telephone and mail of the ex parte motion seeking leave to amend.  The record also contains a proof of service showing the amended complaint was served on defendants at the Cosner residence and PO Box 28600 on October 10, 2018, by overnight delivery.  Tracking data from the USPS confirms the document was delivered to both addresses.  There is also a proof of service showing plaintiff provided notice to defendants at both addresses on October 16, 2018, that the trial court had granted her motion for leave to file an amended complaint.  The notice enclosed a copy of the court's signed order informing defendants that they could "file any responsive pleadings" to the amended complaint.[5]

Defendants do not attack the validity of the proofs of service.  Instead, they contend their lack of actual notice of the amended complaint justifies relief.  Yet any lack of actual notice was due to their own negligence.  They failed to apprise plaintiff and the court of their correct address for service.  The withdrawal order listed defendants' address, phone number, and e-mail.  Both plaintiff and the trial court relied on that information for service.  It was defendants' duty to inform the court and plaintiff if they wished to be served at another address:  "An attorney or self-represented party whose

---

[4]  We need not decide whether Nelson's knowledge can be imputed to defendants. Defendants knew this case was pending but neglected it.  Further, as explained below, defendants signed the stipulation, indicating they had knowledge of the amended complaint and the risk of default.

[5]  It bears repeating that plaintiff's amendments to the complaint did not add any new parties, theories of liability, or causes of action.  Rather, plaintiff only amended her prayer to set forth the specific sums she was seeking.  As such, the amendments did not "raise[] the stakes of the case" by changing the gravamen of the lawsuit, as defendants suggest.

17

mailing address, telephone number, fax number, or e-mail address . . . changes while an action is pending must serve on all parties and file a written notice of the change." (Cal. Rules of Court, rule 2.200.)

"[T]he 'person to be served' has the burden of notifying the court of any change of address, and failure so to do does not enable him to claim improper notice." (*Bethlahmy v. Customcraft Industries, Inc.* (1961) 192 Cal.App.2d 308, 310.) Even under the more lenient section 473, subdivision (b), "[w]hen a default is the result of one party flouting [the California Rules of Court] or failing to exercise diligence to ascertain what the law requires of them, trial courts . . . should not . . . grant that party relief from default." (*McClain v. Kissler* (2019) 39 Cal.App.5th 399, 404-405, 424 (*McClain*).) Indeed, mistake is not a ground for relief when it "'is simply the result of professional incompetence, general ignorance of the law, or unjustifiable negligence in discovering the law . . . .'" (*Henderson v. Pacific Gas & Electric Co.* (2010) 187 Cal.App.4th 215, 229-230.)

"Countenancing a litigant's blatant disregard of the judicial process and rules has serious downsides. It invites other litigants to ignore the laws and rules and renders the process unfair to most other litigants and counsel who endeavor to comply with them. It also undermines trial courts' ability to manage their caseloads and, in turn, to serve other litigants in a timely way. . . . 'It would also thwart vital "policies [which] favor getting cases to trial on time, avoiding unnecessary and prejudicial delay, and preventing litigants from playing fast and loose with the pertinent legal rules and procedures." [Citation.] "When inexcusable neglect is condoned even tacitly by the courts, they themselves unwittingly become instruments undermining the orderly process of the law."'" (*McClain*, *supra*, 39 Cal.App.5th at p. 424.)

Here, defendants' failure to provide notice of any changes to their address precludes them from seeking equitable relief from default. To recap, they failed to alert either plaintiff or the court that they were receiving mail at PO Box 28600 instead of the

Cosner residence. Although plaintiff eventually found PO Box 28600 and began serving defendants at that address, it was not her duty to do so. (See *Bethlahmy v. Customcraft Industries, Inc.*, *supra*, 192 Cal.App.2d at p. 310.) Further, Cosner claims not to have received any of the documents that plaintiff sent to PO Box 28600. This apparently occurred because defendants only checked their mail sporadically and then failed to pay a renewal fee – more examples of their negligence – and were forced to change their PO Box number in late 2018. Again, they did not alert plaintiff or the court to this change. Plaintiff never learned of the new PO Box number, and, consequently, kept serving defendants at the Cosner residence and PO Box 28600.

That defendants chose to represent themselves does not affect our analysis. California Rules of Court, rule 2.200 explicitly requires a self-represented party to file a written notice. "The fact that the defendants had no lawyer representing them and were appearing in propria persona does not entitle them to any different treatment in regard to their duty to notify the court when they change their address. 'A lay person, who is not indigent, and who exercises the privilege of trying his own case must expect and receive the same treatment as if represented by an attorney no different, no better, no worse.'" (*Westervelt v. Robertson* (1981) 122 Cal.App.3d Supp. 1, 8.) "A doctrine generally requiring or permitting exceptional treatment of parties who represent themselves would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation." (*Rappleyea*, *supra*, 8 Cal.4th at pp. 984-985.)

Defendants were not just unreachable by mail. They were virtually unreachable by any means. They missed plaintiff's telephonic notice of her ex parte motion to amend the complaint because Cosner either failed to set up her voicemail or her voicemail was full. This was not a unique event, as defendants also missed plaintiff's calls and voicemails regarding Cosner's deposition. They even missed an e-mail from the trial court containing the September 28, 2018 minute order, which struck plaintiff's answer to the initial complaint and set a default prove-up hearing. While the deposition

19

and minute order communications are not directly related to defendants' failure to answer the amended complaint, they underscore defendants' negligence in this case. Defendants were unreachable by mail, phone, and e-mail. They cannot now complain that they lacked notice of the proceedings.

Besides, defendants had actual notice that an amended complaint had been filed by at least November 19, 2018, when they signed the stipulation. The first page of the stipulation states the parties "agree as follows: [¶] 1. The operative pleading in this matter is the First Amended Complaint." Cosner's declaration ignores the stipulation and sidesteps the issue of when defendants learned an amended complaint had been filed. Rather, Cosner states that she "was never *served* with a copy of the First Amended Complaint in this case and [had not] *seen* a copy of it until very recently." (Italics added.) The trial court made no finding as to when defendants became aware of the amended complaint. But given the signed stipulation, which defendants do not contest, they had actual notice of the amended complaint by November 19, 2018. Default was not entered until December 17, 2018. Defendants had nearly a month to review the case status and file an answer. Yet they did nothing.

In *Cruz*, the plaintiff filed a product liability suit against the distributor of a pressure cooker in December 2004. The plaintiff mailed the summons and complaint to defendant's chairman, Barriga. The defendant did not file an answer, so the plaintiff filed a request for entry of default and mailed it to defendant in early February 2005. (*Cruz*, *supra*, 146 Cal.App.4th at pp. 493-494.) The head of defendants' claims and insurance department, Ramos, forwarded a copy of the default request to the defendant's insurer on February 22, 2005. (*Id*. at pp. 504, 506.) The court entered default on February 25, 2005, and a default judgment was entered against the defendant in May 2005. In late-November 2005, the defendant filed a motion for relief. (*Id*. at p. 494.) The trial court granted the motion on equitable grounds, relying on declarations from Barriga and

20

Ramos that stated they were unaware of the lawsuit until the filing of the default request. (*Id*. at pp. 494, 502, 504.)

The appellate court reversed. Among other things, it found the defendant had not established extrinsic mistake. "[Defendant] was notified of the pending lawsuit by mail, and [an] employee who was authorized to receive mail on [defendant's] behalf received and accepted the summons and complaint. This evidence is sufficient to establish that, at a minimum, [defendant] had constructive knowledge of the fact that the lawsuit had been filed. In light of this evidence, [defendant] was required to present evidence sufficient to establish that *through some error not attributable to its own handling of the matter, [defendant] did not receive actual notice of the lawsuit*. It did not do so. Barriga does not state in his declaration that he was unaware of the lawsuit or that he had no knowledge of the summons or complaint. Instead, he simply state[d] that he 'never received' the summons and complaint. This statement does not establish that [defendant] was unable to defend against the action because of lack of notice of the lawsuit. At most, it establishes a lack of sufficient internal procedures to ensure that mail received at [defendant's] offices is routed to the intended recipients." (*Cruz*, *supra*, 146 Cal.App.4th at p. 504, italics added.)

The court also found that "[a]t a minimum, [defendant] was made aware of [plaintiff's] request for entry of default at some time before February 22, 2005, when Ramos forwarded the notice of default to [defendant's] insurance broker, which was prior to the time default was entered on February 25. It . . . offered *no* excuse as to why it made no attempt to defend the action or to specially appear once it admittedly had notice of the possibility of entry of default. [¶] [Defendant did] not establish[] that there was any *extrinsic* mistake that prevented it from defending against [the] lawsuit. Rather, . . . any mistake that may have resulted in Barriga or Ramos not receiving the summons and complaint *occurred internally, as a result of improper handling of the matter* within the corporation's office. This does not constitute a satisfactory excuse for failing to

21

defend. Further, even if one were to accept [defendant's] claim that it was unaware of the lawsuit prior to receiving [plaintiff's] request for entry of default, [defendant] still has not offered any justification for *why it did not take any action* or seek to have its insurer take any action in the time between when Ramos received notice of the action and the entry of default." (*Cruz*, *supra*, 146 Cal.App.4th at p. 506, third and fourth italics added.)

Cruz is instructive here. At the very least, defendants had constructive notice that an amended complaint had been filed. To the extent they lacked actual notice of its existence, that was due to their mishandling of this lawsuit. They chose not to participate in the lawsuit after their counsel withdrew. Then, as explained above, they missed the multiple notices about amending the complaint due to a combination of their failure to (1) inform the court and plaintiff of changes to their address, (2) pay their PO Box renewal fee, (3) timely check their mail, and (4) set up or maintain a working voicemail. Also, like *Cruz*, defendants were given actual notice of the existence of the amended complaint in November 2018 via the stipulation. They had nearly a month to act before default was entered but did nothing (the misrepresentation is addressed below). These are not exceptional circumstances warranting relief.

Defendants cite *In re Marriage of Park* (1980) 27 Cal.3d 337 (*Park*) and *Jones v. Lindsey* (1952) 114 Cal.App.2d 237 (*Jones*) for the proposition that relief may be granted where "the defendant failed to receive notice of the proceedings because of a new address." Both cases are unpersuasive.

*Park* involved a marriage dissolution in which the wife was unexpectedly arrested at her home while her husband was present and then deported. Due to the swiftness of her deportation, she was unable to notify her divorce attorney. (*Park*, *supra*, 27 Cal.3d at p. 340.) During the dissolution hearing, the husband did not tell the court that his wife had been deported and instead suggested that she had voluntarily departed. (*Id.* at p. 341.) The court found the husband "had a duty to inform the court of the extrinsic facts that prevented his wife's attendance. [Citations.] By concealing those

22

facts, [the husband] breached his duty of disclosure and perpetrated a fraud upon the court as well as his wife." (*Id*. at p. 343.)

Needless to say, *Park* is inapposite. Among other things, the wife in *Park* was physically prevented from participating in the dissolution proceeding due to her surprise deportation. Here, defendants' failure to participate was due to their failure to provide notice of their updated addresses and their failure to check their mail or maintain their voicemail. Moreover, unlike *Park*, plaintiff was unaware that defendants were not receiving any of the documents she served and did not know why defendants were not participating in this action.

In *Jones*, a default judgment was entered against the plaintiff. The plaintiff's attorney filed a declaration stating that he did not receive notice of the trial date and that he had changed his office location twice since the action had been filed. (*Jones*, *supra*, 114 Cal.App.2d at p. 238.) The court granted the plaintiff's motion to vacate the judgment under section 473 because the trial notice had been mailed to the attorney's old address. (*Id*. at pp. 238-239.) Unlike here, the court found that the defendant in *Jones* had notice of the attorney's new address prior to the trial. (*Ibid*.) *Jones* also involved a motion under section 473, which is construed liberally to provide relief from default. (*Ibid*.) In contrast, the equitable relief sought by defendants is reserved for "exceptional circumstances." (*Rappleyea*, *supra*, 8 Cal.4th at pp. 981-982.)

### b. extrinsic fraud

"'Extrinsic fraud occurs when a party is deprived of the opportunity to present his claim or defense to the court; where he was kept ignorant or, other than from his own negligence, fraudulently prevented from fully participating in the proceeding. . . . The essence of extrinsic fraud is one party's preventing the other from having his day in court.' [Citations.] Extrinsic fraud only arises when one party has in some way

23

fraudulently been prevented from presenting his or her claim or defense." (*Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294, 1300 (*Sporn*).)

The trial court found Josefsberg misrepresented to Nelson that defendants were in default as of November 2018 and could not file a responsive pleading to the amended complaint. While denied by Josefsberg, this finding is supported by substantial evidence. The Nelson declaration details the misrepresentation, and Nelson's follow up e-mail after the November 2018 call indicates that he believed defendants were in default. Likewise, the stipulation prepared by plaintiff heavily implies that defendants were in default and could not file a responsive pleading. For example, it contained agreements that "[a]ny defaults in this matter other than as to [Traditional] are vacated" and that Cosner could apply ex parte for a reversal of the trial court's "[o]rder striking the Answer in this matter."

Though such behavior would be inexcusable, a misrepresentation alone is not enough to warrant equitable relief. Among other things, "[r]elief will be denied . . . if the complaining party's negligence permitted the fraud to be practiced or the mistake to occur." (*Manson*, *supra*, 176 Cal.App.4th at p. 47.) As explained above, defendants' negligence caused them to miss every document served on them after their counsel withdrew. As a result, they were unaware that an amended complaint had been filed and that they could answer without penalty. Defendants also do not explain why they never checked the court file after the misrepresentation occurred to determine the status of the lawsuit. A simple review of the file would have alerted them to the misleading statement and revealed that they were not in default and could file an answer. Their unwillingness to pay any attention to this lawsuit allowed the fraud to be practiced upon them.

In addition, extrinsic fraud only applies when there is causation between the misrepresentation and a defendant's failure to present a defense. (*Sporn*, *supra*, 126 Cal.App.4th at p. 1300.) "Relief on the ground of extrinsic fraud or mistake is not available to a party if that party has been given notice of an action yet fails to appear,

24

without having been prevented from participating in the action." (*Cruz*, *supra*, 146 Cal.App.4th at p. 503.) The trial court did not appear to consider causation, as there is no evidence that the misrepresentation prevented defendants from participating in this case. Nothing in the Nelson or Cosner declarations explains why defendants took no action in this proceeding after purportedly being misled.

If anything, the misrepresentation that they were in default should have spurred defendants into taking immediate action. If they believed themselves to be in default in November 2018, they provide no explanation as to why failed to act diligently and waited until August 2019 to file this motion, which is discussed in the next section. Nor do they explain why they did not timely return the stipulation. Conversely, if they did not believe they were in default after the misrepresentation, then no extrinsic fraud occurred. Rather than take any action after the misrepresentation, defendants did nothing and offer no explanation.

For these reasons, the trial court misapplied the law by failing to consider defendants' negligence and the lack of causation. (*Manson*, *supra*, 176 Cal.App.4th at p. 47; *Sporn*, *supra*, 126 Cal.App.4th at p. 1300.)

### *2. Lack of diligence*

The trial court found that considering defendants were misled, they acted with reasonable diligence after learning of the default judgment. This finding is not supported by substantial evidence.

Generally, diligence is measured from when the party discovers the default or default judgment against it. (*Rappleyea*, *supra*, 8 Cal.4th at p. 982.) But this case presents unusual circumstances. Due to the misrepresentation, defendants apparently believed they were in default in November 2018, even though they were not. Thus, we must determine whether defendants' diligence should be measured from when defendants

25

learned of the actual default judgment, which occurred in mid-2019, or from when they erroneously believed themselves to be in default.

We think a defendant that believes it is in default must act with diligence, even if that belief is false and the result of an adversary's misrepresentation. Our Supreme Court has stated that courts should evaluate "whether defendant[s] in the *light of the circumstances known to* [*them*] acted unreasonably in not filing the motion to set aside the default judgment earlier." (*Weitz v. Yankosky* (1966) 63 Cal.2d 849, 857-858, italics added.)[6] If a defendant believes it is in default, failing to act is unreasonable. At that point, the defendant indisputably has notice of the action and the risk of a default judgment. Any decision it makes to further ignore the action is made on its own accord, not for extrinsic reasons. By choosing to ignore the risk of default, the defendant becomes responsible for the consequences. A defendant that has knowledge of a lawsuit against it must be encouraged to act, not sit on its rights. (See *McClain*, *supra*, 39 Cal.App.5th at pp. 423-424.)

Here, defendants did not act diligently. Assuming they believed themselves to be in default in November 2018, they provide no explanation as to why they took no action in this lawsuit and waited until August 2019 to file this motion. Based on the record, we can only conclude it was defendants' lack of diligence that prevented them from filing this motion sooner. Their lack of diligence precludes equitable relief. (See, e.g., *Cruz*, *supra*, 146 Cal.App.4th at p. 506 [lack of diligence where defendant inexplicably waited nine months to file motion for relief after learning of request for default].)

Given defendants' inability to satisfy the satisfactory excuse or diligence prong, we do not address whether they have a meritorious defense. However, we note that in their meritorious defense argument, defendants suggest that the trial court should

---

[6] Courts also consider prejudice to the plaintiff, but the plaintiff's failure to show prejudice is not decisive. (*Weitz v. Yankosky*, *supra*, 63 Cal.2d at p. 857.)

not have entered a default judgment against them because plaintiff did not support the amount of the judgment with admissible evidence. (See Cal. Rules of Court, rule 3.1800(a)(2).) Defendants do not appear to offer this argument as an independent ground for vacating the judgment outside the context of extrinsic fraud or extrinsic mistake. To the extent they do, we will not address the argument since, among other things, it is not stated under a separate heading. (Cal. Rules of Court, rule 8.204(a)(1)(B); *Akins v. State* (1998) 61 Cal.App.4th 1, 17, fn. 9.)

## C. Relief under Section 473, subdivision (b)

The trial court stated it was granting equitable relief. Likewise, both parties agree the trial court's decision was based on its equitable powers, not section 473, subdivision (b). Despite this, both parties briefed the trial court's ability to grant relief under Section 473, subdivision (b). It does not appear that either party seeks disposition of this issue. Plaintiff's opening brief argued that defendants are not entitled to relief under this statute to show, all the more so, that they are not entitled to relief under the court's narrower equitable powers. In other words, plaintiff only briefed this issue for comparison's sake. In turn, defendants discussed the issue in their respondent's brief out of an abundance of caution. Since both parties agree that the trial court granted equitable relief and neither party seeks resolution of the issue, we do not address the parties' arguments under section 473, subdivision (b).

We also note that the trial court could not have granted relief under section 473, subdivision (b). The default was entered on December 17, 2018. Defendants' motion for relief was not filed until nearly eight months later, on August 7, 2019. It is immaterial that their motion was filed within six months of the default judgment, which was entered on February 8, 2019. The six-month period for granting relief under section 473, subdivision (b), "runs from entry of default, not entry of judgment." (*Manson*, *supra*, 176 Cal.App.4th at p. 42.) "'[S]etting aside and vacating the judgment alone

27

. . . would [be] an idle act, because the default [would stand] undisturbed. . . .  If the judgment [alone] were vacated it would be the duty of the court immediately to render another judgment of like effect, and the defendants, still being in default, could not be heard in opposition thereto.'"  (*Howard Greer Custom Originals v. Capritti* (1950) 35 Cal.2d 886, 888-889.)

## III

## DISPOSITION

The trial court's order is reversed.  Plaintiff is entitled to her costs on appeal.


MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


THOMPSON, J.