Filed 2/22/22  Troy v. G. De Cohen, Inc. CA2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| KEITH TROY,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>G. DE COHEN, Inc., et al.,<br><br>Defendants and Respondents. | B307033<br><br>(Los Angeles County<br>Super. Ct. No. BC612093) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Randolph Hammock, Judge.  Affirmed.

Keith Troy, in pro. per., for Plaintiff and Appellant.

Law Offices of William Boon and William Boon for Defendants and Respondents.

This is the second appeal arising from a default judgment entered in favor of plaintiff and appellant Keith Troy and against defendants and respondents G. De Cohen, Inc. (GDI) and Geraldine De Cohen. In our prior opinion, we reversed the trial court's order setting aside the default, finding that respondents' motion for discretionary relief under Code of Civil Procedure section 473, subdivision (b) (section 473(b))[1] was untimely. On remand, respondents again moved to set aside the default, this time based on the court's equitable powers. The trial court granted the motion and set aside the default.

Appellant now appeals, arguing that the doctrines of judicial estoppel and law of the case barred the trial court's consideration of equitable relief. He also contends that respondents failed to make an adequate showing of extrinsic mistake as required for relief. We find the trial court did not abuse its discretion. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

I. *Complaint, Default, and First Motion to Set Aside Default*

We summarize the relevant facts here as detailed in our prior unpublished opinion, *Troy v. G. De Cohen, Inc.* (Dec. 16, 2019, No. B287180) (nonpub. opn.) (*Troy I*).

On February 26, 2016, appellant, acting in propria persona, filed a 140-page, 822-paragraph complaint against respondents and defendants Natural Ivy Foundation, Inc. (Natural Ivy), Pernetha Smith, Elijah Smith, and Moses Smith.[2] The complaint alleged that appellant had an oral agreement with Natural Ivy and the Smiths to rent a room in a Los Angeles house owned by GDI, of which De Cohen is the principal. The rental relationship quickly soured and ultimately ended when appellant was locked out of the premises. The complaint asserted 21 causes of action against various parties, including respondents, and sought nearly $500,000 in damages.

On April 1, 2016, appellant filed proofs of service representing that the complaint and summons were served on respondents. On May 13, 2016,

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] These defendants are not involved in the instant appeal. We refer to the individuals sharing the surname Smith by first name for clarity.

appellant filed a request for entry of default against GDI, Natural Ivy, and the Smiths. He served copies of the request by mail on respondents. The request was granted as to the Smiths but otherwise denied on May 23, 2016. Appellant later refiled the request and the court entered Natural Ivy's default on June 1, 2016. The court entered the default of GDI on September 12, 2016 and De Cohen on September 27, 2016. Appellant served the request for entry of default on respondents by mail in June 2016 (as to the default against Natural Ivy) and September 2016 (as to respondents).

Appellant subsequently requested entry of default judgment. The trial court denied his request without prejudice on February 8, 2017, due to deficient proof of damages. Appellant filed a second request for default judgment on May 30, 2017. After a prove-up hearing the same day, the trial court entered default judgment against respondents and the other defendants in the amount of $67,185.00. Appellant served respondents with notice of the default judgment on June 14, 2017.

On August 15, 2017, appellant obtained a writ of execution against all defendants. Appellant asserts that he used the writ of execution to "levy bank account(s)" belonging to De Cohen and to obtain liens on real property she owned.

On September 29, 2017, one year after entry of default and four months after entry of default judgment, respondents jointly filed a single motion to set aside the default and default judgment under section 473(b). In their supporting memorandum, respondents represented that relief was "sought on the grounds of mistake, inadvertence, surprise, and excusable neglect." They argued that De Cohen, "an elderly woman who has no previously [*sic*] experience with the legal system," was not personally served with the summons and complaint and "was advised by someone[3] who represented that they had extensive experience with the legal system that she did not

_____

[3] In an accompanying declaration, De Cohen identified the "someone" as "a Mr. Jeff Anderson." She stated that Natural Ivy and either Moses or Elijah told her about the lawsuit and put her in contact with Anderson. De Cohen also asserted that the other parties advised her "that I did not need to worry about the matter," because they had been the ones who had personal dealings with appellant.

have to worry about the lawsuit and that she didn't need to do anything because she was not properly served." Respondents did not mention the court's inherent equitable discretion as a basis to set aside the default and default judgment.

The court heard and granted the motion on November 3, 2017. In its minute order, it explained: "De Cohen has made sufficient showing of mistake. The motion was made within six months of entry of the default judgment. California law favors resolution of cases on the merits." The written order did not provide additional explanation but stated that the ruling was made "pursuant to CCP § 473(b)."

Appellant timely appealed the ruling. While that appeal was pending, appellant filed a motion to vacate the set aside order as void because respondents' section 473(b) motion had not been timely filed. Respondents opposed the motion to vacate, characterizing it as an improper motion for reconsideration, and contending that the trial court "clearly had ample basis" to grant the motion pursuant to its inherent equitable powers.

The court heard and denied appellant's motion to vacate on July 19, 2018. In its order after hearing, which respondents prepared, the court explained that it lacked jurisdiction over the motion due to plaintiff's pending appeal. However, the court struck the following paragraph respondents included in their proposed order: "At the November 3, 2017 hearing on Defendants' Motion to Vacate Defaults and Default Judgments, the Court determined under its inherent equity power to grant relief from said defaults and default judgments finding that they were procured by extrinsic fraud or mistake, and that Defendants established excusable neglect which resulted in the entry of the defaults and default judgments. The defendants demonstrated that they have a meritorious case; that they had a satisfactory excuse for not presenting a defense to the original action; and the defendants demonstrated diligence in seeking to set aside the defaults and default judgments once they had been discovered."

Appellant appealed the order denying his motion to vacate. We consolidated his two appeals for all purposes.

II.   *First Appeal*

In *Troy I*, we found that the trial court erred in granting respondents relief from default under the discretionary portion of section 473(b). That provision requires the motion for relief to be filed within six months of the clerk's entry of default. (§ 473, subd. (b).) Because respondents filed their motion a year after the court entered default in September 2016, the motion was untimely and the trial court lacked jurisdiction to grant relief.

Nevertheless, respondents urged us to affirm the trial court's order because the court could have properly granted relief under its inherent equitable powers. We declined to do so, finding that the record "demonstrates that the court did not rely upon its broad equitable powers to set aside the default and default judgment." We noted that the trial court struck respondents' proposed findings regarding the court's equitable powers from the order denying appellant's motion to vacate. Thus, we would not "presume findings a trial court expressly rejected. . . . The trial court found that De Cohen made a mistake, but rejected defendants' proposed findings relevant to a finding of exceptional circumstances" that would allow for equitable relief. Because the record "'clearly demonstrate[d] what the trial court did, we will not presume it did something different.'" (*Lafayette Morehouse, Inc. v. Chronicle Publishing Co*. (1995) 39 Cal.App.4th 1379, 1384.)

We therefore reversed the trial court's order setting aside the default. In light of that decision, we found appellant's appeal of the order denying his motion to vacate was moot.

III.   *Second Motion to Set Aside Default*

On January 7, 2020, respondents filed a second motion to set aside the default and default judgment. Respondents moved to set aside the default pursuant to the court's "inherent equitable powers" on the ground of extrinsic mistake. Respondents also attached a proposed answer, which included a general denial and several affirmative defenses.

In her supporting declaration, De Cohen stated that her business, GDI, "works with various social service agencies and non-profit organizations to provide shelter, care and supervision to developmentally disabled people." She explained that she provided the shelter for the clients of the third party

5

agencies, and received payment from those agencies. She further stated that appellant "came to my facility as a temporary placement from the Natural Ivy Foundation" around February 2014, that Natural Ivy "was responsible for paying for Mr. Troy's shelter," and she "did not receive funds from Mr. Troy or have an agreement with him for the placement/shelter." She further stated that appellant's placement was terminated in May 2014 by Natural Ivy, for reasons "solely determined" by Natural Ivy, and that appellant and Natural Ivy "addressed how and when he left the premises." De Cohen also declared that she "had minimal or no contact" with appellant while he stayed at her property, and she "was not involved with the decision to terminate his placement or with the termination of his placement."

De Cohen also declared that she became aware of the litigation in approximately July 2016, when she was contacted by either Moses or Elijah, on behalf of Natural Ivy, and "advised that a lawsuit had been filed against all of us by Mr. Troy." She was also advised "that I did not need to worry about the matter – (this made sense to me because Mr. Troy was their Client. . . . ) The Smiths then put me in touch with a Mr. Jeff Anderson who they advised would provide me legal advice." According to De Cohen, Anderson told her she "didn't need to worry or do anything because I was 'never served.'" De Cohen stated that she believed Anderson. In addition to the statements by Moses or Elijah and Anderson, De Cohen stated that around the same time, she was advised by Pernetha, one of the owners and managers of Natural Ivy, "that Natural Ivy would take care of the lawsuit for me and that I didn't need to do anything because I had nothing to do with Mr. Troy or his placement at my facility. I believed Ms. Smith and the Natural Ivy Foundation would file an Answer on my behalf or otherwise defend the action against me." De Cohen stated that she did not learn until "a few weeks before" she filed her first motion to set aside the default in September 2017 that the Smiths and Natural Ivy "had neither appeared in the action themselves nor defended or otherwise addressed the litigation against me," and she then "immediately contacted an attorney."

Respondents also included a declaration from Pernetha, stating that appellant was a client of Natural Ivy and that appellant "did not have any contractual relationship with Ms. De Cohen or her business." Natural Ivy

6

terminated its relationship with appellant after he spent "approximately two to three months at the facility." Sometime in 2016, Pernetha advised De Cohen that "she didn't need to do anything about the lawsuit because I and the Natural Ivy Foundation would take care of everything for her and her business." She also referred De Cohen to Anderson, and "advised her that Mr. Anderson would provide her legal advice." Pernetha stated that Anderson told her "that because Ms. De Cohen and her business were 'never served,' she didn't need to do anything about the lawsuit. Accordingly, I and the Natural Ivy Foundation did not take any action to defend Ms. De Cohen and her business." Pernetha stated she learned of the default judgments entered against her, Natural Ivy, and respondents in "approximately September 2017."

Appellant filed an opposition. He argued, as he does on appeal, that the trial court had already rejected respondents' request for equitable relief when it struck the proposed language from its 2018 order denying appellant's motion to vacate and therefore that respondents' claim was barred by the law of the case doctrine. He also contended that the excuse offered by respondents for failing to respond to the complaint was unreasonable, as well as intrinsic rather than extrinsic, and therefore insufficient for equitable relief.

Following a hearing on July 28, 2020,[4] the court issued a written order granting the motion to set aside the default and default judgment. The court rejected appellant's argument that the law of the case precluded equitable relief, noting that the trial court previously struck proposed language regarding its inherent equitable power not in the context of granting respondent's first motion to set aside the default, but when denying appellant's subsequent motion to vacate the set-aside order. Under those circumstances, the trial court found that it had struck the language because it "would have added findings regarding the propriety of granting [respondents'] motion on a different ground than what it had been granted

---

[4] The minute order from the hearing indicates that the court heard oral argument on the motion to vacate the defaults, but no court reporter was present. There is no transcript of this hearing in the record.

on." The court also cited our discussion on this issue in *Troy I*, including our finding that respondents' original motion to set aside the default had not mentioned the court's inherent equitable discretion as a basis for relief; instead, respondents raised this argument only after appellant challenged the timeliness of their original motion. Thus, the trial court concluded that neither our decision in *Troy I* nor the trial court's order preceding it made an affirmative finding that equitable relief was unavailable.

Turning to the three elements required to establish relief from extrinsic mistake,[5] the court first found that respondents had shown they had a meritorious defense. The court relied on De Cohen's declaration as evidence that she was paid by third party agencies, not directly by boarders, and that in this case Natural Ivy "was responsible for paying for Mr. Troy's shelter," and "addressed how and when he left the premises." De Cohen also declared that respondents "had no contractual arrangement with Mr. Troy." The court concluded that these facts demonstrated that respondents had a meritorious defense to appellant's contract-based claims, as well as his claims for fraud and negligent misrepresentation, which "could not succeed against these Defendants if Plaintiff's relevant dealings were with Natural Ivy Foundation."

The court also found respondents had established a satisfactory excuse based on extrinsic mistake. The court cited the declarations "of competent witnesses" including De Cohen's statements that she was told by the Smiths in approximately July 2016 that she "did not need to worry about the matter," and that "Natural Ivy Foundation would take care of the lawsuit for me and that I didn't need to do anything because I had nothing to do with Mr. Troy or his placement at my facility." De Cohen also stated that Natural Ivy put her in touch with a lawyer, who told her she had not been served properly and therefore "shouldn't worry or do anything." The court also cited Pernetha's statements confirming that she met with De Cohen "around 2016"

_____

[5] To obtain equitable relief, the party in default must show (1) a meritorious defense; (2) a satisfactory excuse for not presenting this defense to the original action; and (3) diligence in seeking to set aside the default once it was discovered. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 982 (*Rappleyea*).

and advised De Cohen that she and Natural Ivy would take care of the lawsuit.

The court rejected appellant's argument that Anderson's advice regarding proper service rendered respondents' mistake intrinsic rather than extrinsic. The court reasoned: "That ignores, however, the more general mistake that [respondents] made in relying on Natural Ivy Foundation to 'take care of everything.' [Respondents'] mistake may have been partly intrinsic, but they also present evidence of extrinsic mistake." The court also rejected appellant's contention that the excuse was unreliable because respondents had not offered it in their original motion, noting that respondents "did not need to (and did not) argue extrinsic mistake . . . when they originally filed their motion to set aside."

Appellant timely appealed.

## DISCUSSION

I. *Judicial Estoppel*

Appellant contends that respondents have taken "two different positions" regarding their reason for failing to respond to the complaint: originally, De Cohen stated that she relied on purported legal advice given by Anderson that respondents were not properly served; later, respondents claimed to have relied on the assurances given by co-defendants Natural Ivy and the Smiths that they would handle the litigation. Appellant argues that these positions are inconsistent with each other and therefore, that respondents' latter claim is barred under the doctrine of judicial estoppel. We find that appellant has forfeited this claim; moreover, judicial estoppel is inapplicable to this case.

"'The doctrine of judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process. . . . 'The policies underlying preclusion of inconsistent positions are "general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings."' [Citation.]'" (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181 (*Jackson*).)

9

Judicial estoppel "'"'"applies when: "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.'"'"'" (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 422, quoting *Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986–987; see also *Jackson, supra,* 60 Cal.App.4th at p. 183.) "It is well established that, for the doctrine to apply, the seemingly conflicting positions 'must be clearly inconsistent so that one necessarily excludes the other.'" (*Jackson, supra,* 60 Cal.App.4th at p. 182, citation omitted.) "[J]udicial estoppel is an equitable doctrine, and its application, even where all necessary elements are present, is discretionary." (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.*, *supra*, 36 Cal.4th at p. 422, collecting cases.)

As an initial matter, appellant has forfeited his judicial estoppel argument by failing to raise it before the trial court. (See, e.g., *Reid v. City of San Diego* (2018) 24 Cal.App.5th 343, 357 [appellants forfeited argument because they "failed to raise or develop it in the trial court"]; *Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11 ["'[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court.'"].) As a result, the trial court did not make any factual findings regarding the factors necessary to establish judicial estoppel, nor did it have the opportunity to exercise its discretion regarding whether to apply the doctrine here. We will not do so in the first instance on appeal.

Further, even if we did reach the merits of appellant's claim, we find no basis for judicial estoppel here. De Cohen stated that Pernetha and either Moses or Elijah told her that she "did not need to worry" about the lawsuit because appellant was not her client, and that Natural Ivy would take care of the matter. De Cohen was also referred to Anderson, who advised her that she "didn't need to worry or do anything" because she was not properly served. De Cohen declared that she believed these statements by the Smiths and Anderson, and as a result she did not respond to the lawsuit. We

disagree with appellant's contention that De Cohen's claims of reliance on Anderson and the Smiths were "mutually exclusive." Although the reasons given were different, De Cohen's resulting conduct was the same, and we see nothing to suggest why she could not have relied on both in deciding that she did not need to respond to the complaint. Indeed, the trial court found as much when it determined that De Cohen credibly claimed that she relied on both the Smiths and the purported legal advice she received from Anderson.

II.    *Law of the Case*

Appellant argues that in *Troy I*, we found that the trial court had "*implicitly* considered and denied equitable discretion as an alternative basis of its prior set-aside order, having found no exceptional circumstances," and that we deferred to that decision. He therefore contends that the law of the case precluded the trial court from considering respondents' request for equitable relief upon remand. We disagree.

"The law of the case doctrine states that when, in deciding an appeal, an appellate court 'states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal.'" (*Kowis v. Howard* (1992) 3 Cal.4th 888, 892–893, citation omitted.)

Here, it is undisputed that respondents did *not* request relief based on the court's equitable powers in their original 2017 motion to set aside the default. The parties also agree that when the court granted the motion in November 2017, it did not base its ruling on any equitable finding.

Subsequently, appellant filed a motion to vacate the order setting aside the default, arguing that the order was void because respondents' original motion had been untimely. In opposition to that motion, respondents argued for the first time that the trial court could, as an alternative to granting relief under section 473(b), set aside the default based on equitable authority. In support of that argument, respondents included language in their proposed order stating that the court *had* found in November 2017 that respondents met the elements for equitable relief. When the trial court denied appellant's motion in 2018, it struck this language from the proposed order.

The crux of the parties' dispute is over the basis for the trial court's 2018 decision to strike the language regarding equitable relief, and the extent of our findings on that issue in *Troy I*. Appellant contends that at the time of the 2018 hearing on his motion, the trial court "sua sponte . . . treated Defendants' equity-related proposed findings as a then-present request for equitable relief as an alternative basis of its prior ruling." He further asserts that the trial court "then denied such request, having found no exceptional circumstances" and that in *Troy I*, we affirmed this finding.

The record does not support appellant's interpretation. As the trial court found in rejecting appellant's law of the case argument, it never made a prior finding regarding the applicability of equitable relief—it could not have done so in 2017 as respondents had not requested it, and the court accordingly struck the language respondents proposed in 2018 suggesting otherwise. Nothing in the record suggests the trial court considered whether respondents met the elements for equitable relief at that time. Likewise, in *Troy I*, we made no such finding. We rejected respondents' request that we affirm the trial court's order by finding that the court *could have* properly granted relief under its inherent equitable powers. We found that the record clearly demonstrated "that the court did not rely upon its broad equitable powers to set aside the default and default judgment," given the trial court's striking of the proposed findings. Because the trial court expressly declined to make a finding regarding equitable discretion, we could not find on appeal that it did otherwise.

Appellant's attempt to extend our discussion to include a holding that the trial court rejected respondents' equitable relief argument on the merits is not supported by our opinion or the underlying circumstances of the trial court's orders. Thus, the trial court did not violate the law of the case by considering respondents' second motion to set aside the default and default judgment.

III. *Equitable Relief from Default*

Appellant contends the trial court erred in finding that respondents sufficiently established that they failed to timely respond to the complaint due to extrinsic mistake, and accordingly erred in relieving respondents from default on equitable grounds. We find no abuse of discretion.

A.    *Legal Standards*

A court has the inherent authority to vacate an entry of default and default judgment on equitable grounds such as extrinsic fraud or extrinsic mistake. (*Rappleyea, supra*, 8 Cal.4th at p. 981; *Olivera v. Grace* (1942) 19 Cal.2d 570, 575.) The term "extrinsic mistake" is "broadly applied when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits. [Citations.] 'Extrinsic mistake is found when [among other things] . . . a mistake led a court to do what it never intended.'" (*Rappleyea, supra*, 8 Cal.4th at p. 981, quoting *Kulchar v. Kulchar* (1969) 1 Cal.3d 467, 471–472; see also *Bae v. T.D. Service Co. of Arizona* (2016) 245 Cal.App.4th 89, 97-98.) Extrinsic mistake can also be found where "one party relies on another to defend." (*Stiles v. Wallis* (1983) 147 Cal.App.3d 1143, 1147 (*Stiles*), quoting *Kulchar v. Kulchar, supra*, 1 Cal.3d. at pp. 471-472.)

"When a default judgment has been obtained, equitable relief may be given only in exceptional circumstances," after the six month period providing relief under section 473 has elapsed due to the "strong public policy in favor of the finality of judgments." (*Rappleyea, supra*, 8 Cal.4th at pp.981-982.) Accordingly, in order to set aside a default judgment based on extrinsic mistake, the court must apply a "stringent" three-part test: "'First, the defaulted party must demonstrate that it has a meritorious case. Second[], the party seeking to set aside the default must articulate a satisfactory excuse for not presenting a defense to the original action. Last[], the moving party must demonstrate diligence in seeking to set aside the default once . . . discovered.'" (*Id.* at p. 982, quoting *Stiles, supra,* 147 Cal.App.3d at pp. 1147-1148, italics omitted.)

We review a challenge to a trial court's order on a motion to vacate a default on equitable grounds for abuse of discretion. (*Rappleyea, supra*, 8 Cal.4th at p. 981, citing *In re Marriage of Park* (1980) 27 Cal.3d 337, 347; see also *Weitz v. Yankosky* (1966) 63 Cal.2d 849, 854 ["A motion to set aside a default judgment is addressed to the sound discretion of the trial court, and, in the absence of a clear showing of abuse of discretion where the trial court grants the motion, the appellate court will not disturb the order."].)

B.    *Meritorious Defense*

The trial court concluded that respondents established they were likely to have a meritorious defense to the lawsuit based on their proposed answer and evidence suggesting that there was no contractual agreement between appellant and respondents.  Appellant does not challenge this finding for the purposes of this appeal.

C.    *Satisfactory Excuse*

An essential requirement to obtain relief from a judgment on grounds of extrinsic mistake is that the defendant demonstrate a satisfactory excuse for not defending the action.  (*Rappleyea, supra*, 8 Cal.4th at p. 982.)  "Although the policy of the law is to favor a hearing on the merits of a case, courts are not required to set aside default judgments for defendants who flagrantly ignore the responsibility to present a defense.  The burden of a party who has had a default entered against him is not limited to merely articulating the existence of a meritorious case.  The defendant must also demonstrate a satisfactory excuse for not responding to the original action in a timely manner.  [Citation.]"  (S*tiles, supra*, 147 Cal.App.3d at p. 1148.)

Appellant contends that the trial court erred in granting relief to respondents because the evidence showed they made an *intrinsic* mistake by relying on Anderson's purported legal advice, rather than an *extrinsic* one.  He asserts that reliance on Anderson's advice that respondents were never properly served amounts to ignorance of the law, which cannot establish an extrinsic mistake.  (See *Stiles, supra,* 147 Cal.App.3d at p. 1147 ["We do not believe that this equitable theory was ever meant to extend relief to defendants who fail to file an answer because they are ignorant of the law."].)  However, the trial court found that, in addition to relying on Anderson, respondents also established their reliance on assurances by their co-defendants that Natural Ivy and the Smiths would take care of the lawsuit.  Reliance on a co-defendant to defend can be a valid basis for extrinsic mistake.  (See *ibid*.)  Thus, we turn to the trial court's findings regarding the validity of respondents' claim.

"Where a default is entered because defendant has relied upon a codefendant or other interested party to defend, the question is whether the defendant was reasonably justified under the circumstances in his reliance or

14

whether his neglect to attend to the matter was inexcusable." (*Weitz v. Yankosky, supra*, 63 Cal.2d at p. 855, citations omitted.)  Appellant contends that the court abused its discretion in finding respondents were reasonably justified in relying on the Smiths' assurances that they would handle the lawsuit. As in his argument regarding judicial estoppel, he points to the supposed inconsistency between De Cohen's claim that she did nothing in reliance on purported legal advice from Anderson versus her claim that she did nothing in reliance on the Smiths' statements that they would handle the litigation.  But the trial court found no inconsistency in these statements, and rejected appellant's assertion that De Cohen's failure to flesh out her reliance on the Smiths in respondents' first motion to set aside default made her an unreliable witness.  Rather, the trial court found that De Cohen had no reason to discuss her reliance on the Smiths at the time of the original motion, as respondents were not seeking to establish a right to equitable relief at the time.  We find no abuse of discretion in this conclusion. Moreover, we note that De Cohen consistently described the statements made to her by *both* Anderson and the Smiths in her declarations submitted for both motions to set aside the default; she then further detailed her reliance on both statements in the context of the second motion, as it was relevant to equitable relief.

Appellant also argues that the evidence establishes no more than inexcusable neglect by respondents.  He cites to the evidence he provided that he had served respondents with notice that he was seeking the entry of default as to Natural Ivy and the Smiths as early as May and June of 2016; as such, he asserts that respondents could not reasonably continue to rely on a belief that those defendants would defend them.  But the trial court found De Cohen reliable when she stated that she only learned of the default and default judgment around September 2017.  De Cohen also declared that prior to that time she had believed the assurances of the Smiths that they would handle the litigation for her, and that she did not need to do anything because she had not dealt directly with appellant while he lived at her property.  Although appellant presents contrary evidence and challenges the credibility of De Cohen and Pernetha, we will not reweigh evidence or make an independent assessment of credibility on appeal.  It is for the trial court

"to assess credibility and resolve any conflicts in the evidence. Its findings . . . are entitled to great weight. Even though contrary findings could have been made, an appellate court should defer to the factual determinations made by the trial court when the evidence is in conflict. This is true whether the trial court's ruling is based on oral testimony or declarations." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479, fn. omitted.)

Appellant relies on *Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488 (*Cruz*), but we find the facts distinguishable. In *Cruz*, the 16-year-old plaintiff suffered burns when a pressure cooker distributed by defendant Fagor exploded. (*Id.* at p. 493) After Fagor's insurance carrier denied liability, the plaintiff filed and served a summons and complaint in December 2004. (*Ibid.*) Fagor did nothing until February 2005, when a Fagor employee received the plaintiff's request for entry of default and forwarded it to Fagor's insurance carrier. The court entered default judgment in May 2005, but Fagor did not make any appearance in the case until November 2005, when it moved to set aside the default. (*Id.* at p. 494.) The trial court granted Fagor's motion on the grounds of invalid service of the summons and complaint. (*Id.* at p. 495.) In addition, "although it did not explicitly say so, the trial court apparently relied on the ground of extrinsic mistake as an alternative basis for granting relief." (*Id.* at p. 502.).

The appellate court reversed on both grounds. With respect to equitable relief, the court observed that the trial court's order asserted "in a conclusory manner that Fagor 'submitted evidence' that 'it has a meritorious defense, there is a satisfactory excuse for its failure to present [a] timely defense, and it was diligent in seeking to set aside the default.'" (*Cruz, supra,* 146 Cal.App.4th at p. 503.) The court rejected Fagor's claim that it did not know about the lawsuit prior to receiving the entry of default in February 2005, and found that Fagor "has not offered any justification for why it did not take any action or seek to have its insurer take any action in the time between when [a Fagor employee] received notice of the action and the entry of default." (*Id.* at pp. 504-506.)

The court also found that Fagor failed to act diligently when it learned of the request for entry of judgment, waiting until it faced a levy on its accounts receivable. (*Id.* at p. 508.) Fagor contended it "'assumed [its]

16

interest would be protected by [its] insurance broker and carrier'" but the court found that "[u]nder these circumstances, Fagor's failure to inquire as to the status of the case or to follow up with its insurer cannot be considered diligent." (*Id.* at p. 508.)

Here, the trial court expressly found credible De Cohen's statements that when she learned about the lawsuit, she spoke to the Smiths, and she relied on their assurances that they would handle the lawsuit. As such, we cannot conclude that the trial court's finding of satisfactory excuse was an abuse of discretion.

D.    *Diligence*

We also find no abuse of discretion in the trial court's conclusion that respondents were sufficiently diligent to justify equitable relief. The trial court relied on respondents' claim that they had discovered the entry of default and default judgment against them a few weeks before they moved to set aside the default in September 2017. The court also noted that, even assuming respondents received the notice of default judgment served in June of 2017, they acted diligently following that notice. Appellant argues that we should reject these findings and look to the date of entry of default in 2016, and therefore find that respondents failed to act diligently by waiting over a year before seeking relief.

But unlike section 473(b), which sets a jurisdictional deadline for relief from six months after default was entered, equitable relief looks to the party's diligence in acting once the default is "discovered." (*Rappleyea, supra*, 8 Cal.4th at p. 982.) The trial court here found respondents' statements credible that they did not discover the default until mid-2017. We will not reassess that credibility finding, and find no other basis to conclude that the trial court abused its discretion.

In addition, we reject appellant's assertion of prejudice. Although he complains of prejudice stemming from the many years that have elapsed since the events that gave rise to this litigation in 2014, we note that much of that delay is not attributable to respondents. Notably, appellant waited almost two years to file his complaint after the events at issue. He did not file his request for default judgment until over a year after initiating the lawsuit, and five months after the latest entry of default against respondents.

17

Thus, the limited showing of prejudice here further weakens appellant's claim that respondents failed to show diligence.  (See *Rappleyea, supra*, 8 Cal.4th at p. 984 ["If heightened prejudice strengthens the burden of proving diligence, so must reduced prejudice weaken it."].)  In sum, the trial court did not abuse its discretion in setting aside the default and default judgment.

## DISPOSITION

The judgment is affirmed.  Respondents may recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

WILLHITE, ACTING P.J.

CURREY, J.